BLAIR McKISSICK, BRUCE McKISSICK, BARBARA McKISSICK JEMISON, INDIVIDUALLY, AND AS GUARDIAN AD LITEM FOR JOHN McKISSICK AND MOLLY McKISSICK, MINORS, APPELLANTS AND CROSS-RESPONDENTS, v. DOROTHY McKISSICK, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF HOWARD F. McKISSICK, JR., RESPONDENT AND CROSS-APPELLANT.

No. 8984

March 14, 1977                      560 P.2d 1366

---

[1] In view of our disposition of this appeal we need not, at this juncture, consider the cross-appeal.

[Rehearing denied April 13, 1977]

*Beckley, Singleton, De Lanoy, Jemison & Reid,* Chartered, of Las Vegas, for Appellants and Cross-Respondents.

*Raggio, Walker & Wooster,* and *David J. Guinan,* of Reno, for Respondent and Cross-Appellant.

*Bissett and Logar,* of Reno, for Estate of Howard F. McKissick, Jr.

## OPINION

By the Court, THOMPSON, J.:

The former wife and children of Howard F. McKissick, Jr., commenced separate actions, later consolidated, against Dorothy McKissick, Howard's second wife and the administratrix of his estate. Their objective was to secure a judgment against the estate for accrued child support with interest which

became due in the six years preceding Howard's death; to impress a constructive trust for the benefit of the children upon the proceeds of life insurance policies in Howard's name; and, to have the court declare that a time certificate of deposit for $385,000 issued to "Howard F. McKissick, Jr., and/or Dorothy McKissick" was an asset of Howard's estate subject to claims of creditors, and thereafter distributable to his heirs at law.

The district court entered judgment against Howard's estate for accrued child support and interest in the amount of $46,219.96. No appeal is taken from that judgment. The district court impressed a constructive trust over proceeds of life insurance, but limited that trust to $50,000. The district court declared that the time certificate of deposit was held in joint tenancy by Howard and Dorothy prior to Howard's death, and became Dorothy's property by operation of law.

Barbara and the children have appealed from the ruling limiting the constructive trust to $50,000, contending that all life insurance proceeds should be subject to the trust. They also appeal from the judgment that the time certificate of deposit is joint tenancy property. By cross-appeal, Dorothy contends that the district court erred when it impressed a constructive trust upon the proceeds of Howard's life insurance policies.

Barbara McKissick (now Jemison) married Howard F. McKissick, Jr., on October 25, 1953. There were four children of their union: Blair, born October 9, 1954; Bruce, born December 9, 1955; John, born March 7, 1958; and Molly, born September 8, 1959. Their marriage was dissolved by divorce on April 29, 1964. They entered into a property settlement agreement which the court approved and made part of the decree.

The provision of the agreement regarding insurance is quoted below.[1] The district court found that the primary purpose of that provision was to provide for the future support and education of the minor children.

---

[1]*"Life Insurance.*

"The husband agrees that he will maintain the life insurance policy presently insuring his life, which policy is with the Equitable Life Insurance Company of America and which policy is in the face amount of $50,000. free and unencumbered and that he will promptly pay all premiums due thereon. The Wife shall be the irrevocable beneficiary on said policy until the Husband changes the beneficiary naming the First National Bank of Nevada as Trustee of the proceeds of said policy and by the creation of a trust for the benefit of the Wife and the four children of Husband and Wife, said trust to continue until the youngest child has reached the age of twenty-one (21) years or has completed four years of college education, whichever shall first occur, that a pro

Dorothy McKissick and Howard were married in 1965. An accident caused Howard's death on October 24, 1973. He died intestate. During their marriage they acquired valuable real property which they held in joint tenancy, and later sold to Harrah Realty Company. From part of the proceeds of that sale they purchased a time certificate of deposit in the amount of $385,000. That certificate was issued by the First National Bank of Nevada to "Howard F. McKissick, Jr., and/or Dorothy McKissick." The district court found the certificate to be in a form to be paid to the survivor. Howard's estate is insolvent if the time certificate of deposit became Dorothy's as his surviving joint tenant.

1.   As noted, Howard agreed to "maintain the life insurance policy presently insuring his life." That insurance was described as a policy with the Equitable Life Insurance Company of America in the face amount of $50,000. Barbara was to be the irrevocable beneficiary. The evident purpose was to provide for the future support and education of their children.

When the agreement was made Howard did not have a life insurance policy with the Equitable Life Insurance Company of America in the face amount of $50,000. There was no such company. Nor did he then have life insurance in that amount. However, at that time, there were in existence three policies "presently insuring his life" with a total face value of $40,000. At the time of his death those policies named Dorothy, his second wife, beneficiary. Accidental death benefits increased those policies to $112,848.59 which sum Dorothy has received.

The district court found that Howard intended to provide life insurance for the benefit of Barbara and the children in the amount of $50,000, and that the court in its divorce decree so intended. The misdescription of the policy in the property settlement agreement resulted from a mistake and was deemed by the court to be a clerical, as distinguished from a judicial, error. Clearly, the error in describing the insurance "presently insuring his life" may not be attributed to judicial discretion, or as an incorrect result in the exercise of a judical function. Marble v. Wright, 77 Nev. 244, 362 P.2d 265 (1961). The error in

rata portion of said policy shall be released to Husband if he be living. That at the time the last child reaches the age of twenty-one (21) or completes four years of college education, the entire policy shall then become the sole and separate property of the Husband if he be living, upon his paying to Wife the sum of One Thousand Seven Hundred Fifty Dollars ($1,750.00) being one-half (½) of the present cash value of the policy."

describing the insurance was clerical in nature since it did not occur as a consequence of the exercise of a judicial function.[2] Clerical errors may be corrected at "any time." NRCP 60(a); Alamo Irrigation Co. v. United States, 81 Nev. 390, 404 P.2d 5 (1965). Consequently, the court ruled that Dorothy held $50,000 of the insurance money paid to her as constructive trustee for the uses and purposes expressed in the property settlement agreement.

It was permissible for the court to conclude that the property settlement agreement expressed an intention on the part of Howard to provide life insurance for the benefit of Barbara and the children. To conclude otherwise would attribute to Howard an intention to defraud Barbara and the children. There is nothing in the record to suggest such an evil purpose.

The divorce decree obligated Howard to maintain insurance with Barbara as the irrevocable beneficiary.[3] This constituted an equitable assignment for her benefit. Chilwell v. Chilwell, 105 P.2d 122 (Dist.Ct.App. Cal. 1940); Murphy v. Travelers Insurance Co., 534 F.2d 1155 (5th Cir. 1976); General American Life Insurance Co. v. Rogers, 539 S.W.2d 693 (Mo.Ct. App. 1976). He violated the agreement and decree when he designated his second wife, Dorothy, as the beneficiary of the insurance policies. In such circumstances it is permissible to conclude, as did the district court, that the second wife holds the insurance proceeds in a constructive trust for the first wife. Salinas v. Salinas, 62 N.Y.S.2d 385 (Sup.Ct. 1946). The problem remains, however, as to the extent of that trust. The district court limited the trust to $50,000 since that was the sum mentioned in the property settlement agreement.

We believe that the court erred in so limiting the trust. The figure of $50,000 in the insurance paragraph of the property settlement was a part of the misdescription of the life insurance "presently insuring his life." He did not have life insurance in that amount. Notwithstanding this mistake, it is clear that Howard intended to secure his obligation to provide for the support and education of his children in the event of his

---

[2] The provision in the agreement regarding the description of insurance was from a financial statement submitted by Howard or his agent and accepted by counsel for Howard and Barbara as true and correct.

[3] The provision that Howard could change the beneficiary "naming the First National Bank of Nevada as Trustee. . . ." was never effectuated.

untimely death by means of the life insurance he had when the agreement was made.[4] Consequently, Barbara and the children are entitled to the proceeds of that insurance including the increase in amount by reason of Howard's accidental death since such increase properly belongs to the person or persons for whose benefit the insurance was required to be carried. Odom v. Prudential Insurance Company of America, 145 P.2d 480 (Ore. 1944); Newton v. Newton, 472 P.2d 718 (Ct.App. Colo. 1970). We, therefore, conclude that the life insurance proceeds received by Dorothy in the amount of $112,848.59 are held by her as constructive trustee for the benefit of Barbara and the children.

2.    On October 4, 1973, Dorothy purchased a time certificate of deposit from the First National Bank of Nevada. It was issued in the names of "Howard F. McKissick, Jr., and/or Dorothy McKissick." There was no written agreement between Howard and Dorothy with respect to the creation of a joint tenancy in the time certificate of deposit. Neither did the certificate itself contain language of joint tenancy or survivorship.

The purchase of the time certificate was from funds realized by Howard and Dorothy from the sale of real property they had held as joint tenants. Dorothy intended for the time certificate to be in joint tenancy with Howard. The bank officer with whom she dealt indicated that the certificate was in proper form to accomplish that end.

The first question arising from these circumstances is whether the certificate was "in a form to be paid to the survivor" within the meaning of NRS 663.015.[5] The district court held that it was. We do not agree.

---

[4]Regarding child support the agreement stated: "The Husband agrees to pay to the wife, as and for the support and maintenance of the minor children, the sum of one hundred twenty-five dollars ($125.00) per month per child, until the last child attains the age of twenty-one (21) years, unless said children marry or quit school and become self-supporting. In addition, in the event the children of the parties desire to attend college, Husband agrees to pay all the expenses of each child attending college until each child has completed four years of college attendance. . . ."

[5]NRS 663.015: "1. When a deposit has been made, or is made after July 1, 1971, by any person, in any bank or other depository transacting business in this state, in the name of such depositor and one, two or more persons, and in form to be paid to the survivor or survivors of them, such deposit and any additions thereto made by any of such persons, after the making thereof, shall become the property of such persons as joint tenants, and such deposits, together with all dividends thereon, shall be held for the exclusive use of such persons and may be

NRS 111.065(2) provides that "a joint tenancy in personal property may be created by a written transfer, agreement or instrument." A writing is required. Weinstein v. Sodaro, 91 Nev. 638, 541 P.2d 531 (1975). The word "may" in the context of this statute is mandatory. California Trust Co. v. Bennett, 204 P.2d 324 (Cal. 1949). Thus, we here must determine whether the written time certificate of deposit to "Howard F. McKissick, Jr., and/or Dorothy McKissick" is "in a form to be paid to the survivor."

This court has ruled that in order for a joint tenancy to exist in a chose in action (promissory note and mortgage) the instruments must so provide. Newitt v. Dawe, 61 Nev. 472, 133 P.2d 918 (1943). In that case the note was payable "to William J. Dawe or Sue A. Hazell Newitt." The court found no basis for holding that a joint ownership was intended. And, in In re Condos's Estate, 70 Nev. 271, 266 P.2d 404 (1954), in the decedent's personal ledger he described bonds as "U.S. bonds (Paul Condos or Ellen Condos)." The court wrote: "It is impossible to read from the notation an intention on the part of the decedent to create a joint tenancy by the notation or by the use of the word 'or' . . . the notation most clearly falls far short of constituting or evidencing a transfer or agreement." Id. at 286.

Case authority elsewhere denies the creation of a joint tenancy by the use of only the word "or" or the words "and/or." Betker v. Ide, 55 N.W.2d 835 (Mich. 1952); Crocker-Anglo National Bank v. American Trust Co., 338 P.2d 617 (Dist.Ct. App.Cal. 1959); Estate of Syroczynski, 379 N.Y.S.2d 652 (Sur.Ct. 1976). Indeed, in Betker v. Ide, supra, the court held that under a statute strikingly similar to NRS 663.015 the words "and/or" did not constitute the bank accounts there in issue in a form payable to the survivor. We conclude, therefore, that the words of the time certificate of deposit did not create a joint tenancy.

---

paid to any of them during the lifetime of all or to the survivor or survivors after the death of any of them. Such payments and receipts or acquittances of the person or persons to whom such payment is made shall be a valid and sufficient release and discharge to such bank or other depository for all payments made on account of such deposit.

"2. The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or other depository, or a surviving depositor, is a party, of the intention of the depositors to vest such deposit and the additions thereto in such survivor or survivors."

Although the certificate is not itself in proper form to create a joint tenancy, Dorothy contends that oral evidence adduced at trial would permit the court to overcome the deficiency of the instrument and conclude that she and Howard intended to hold title to the certificate as joint tenants. Dorothy testified that she so intended. Of course, Howard's intention is not disclosed. Whether a joint tenancy can be created by such oral evidence of intention is the question to which we now turn our attention.

The Nevada case of Edmonds v. Perry, 62 Nev. 41, 140 P.2d 566 (1943), may be read to suggest that such evidence is admissible on the issue. The court found that the deposit there in question was not in a form to be paid to the survivor. However, in so finding, the court wrote: "It seems that the court below would be justified in holding that it was not in the absence of evidence, parole or otherwise to the contrary." Id. at 58. We reject the dictum that oral evidence of intention to hold personal property in joint tenancy may supply a deficiency in the written instrument. Such a joint tenancy must be created by a. written transfer, agreement or instrument. NRS 111.065 (2). It may not be created orally. Crocker-Anglo National Bank v. American Trust Co., 338 P.2d 617 (Dist.Ct.App. Cal. 1959); California Trust Co. v. Bennett, 204 P.2d 324 (Cal. 1949).

Since joint tenancy is a method by which property may pass upon death a written instrument specifying such intention is essential. Creditors of the decedent and the rights of others who normally would be the natural objects of his bounty may be involved. Their claims should not be erased by oral testimony of intention given by one asserting the rights of a surviving joint tenant. Only a writing may accomplish that consequence. Indeed, joint tenancies are not favored in courts of equity. Newitt v. Dawe, 61 Nev. 472, 133 P.2d 918 (1943).

The district court also gave some weight to the fact that the funds used to purchase the time certificate of deposit were realized from the sale of real property which Howard and Dorothy held as joint tenants. It reasoned that since the source of the money was joint tenancy property, the time certificate later purchased retained that characteristic. That circumstance is not entitled to credit. The joint tenancy was destroyed when the real property was sold. In re Baker's Estate, 78 N.W.

2d 863 (Iowa 1956); In re Estate of Cooke, 524 P.2d 176 (Idaho 1973). The source doctrine and the concept of tracing are inimical to joint tenancy since they are equitable doctrines and, as before noted, equity will defeat a joint tenancy whenever it is possible. Newitt v. Dawe, supra.

We conclude that the time certificate of deposit was not held in joint tenancy by Howard and Dorothy, and set aside the district court judgment in this regard.

3. There remains for determination the status of the time certificate of deposit. For reasons already expressed it is not joint tenancy property. Barbara and the children contend that it was held by Howard and Dorothy as tenants in common. Dorothy asserts that if she is in error with respect to the joint tenancy status of the certificate, then it must be deemed to be community property.

The certificate was acquired by Howard and Dorothy after their marriage and did not become theirs as the result of gift, bequest, devise or descent. Community funds were used to purchase the joint tenancy real property. That tenancy was destroyed when the property was sold. The proceeds of that sale were used to purchase the time certificate. The record does not reflect an understanding or agreement between Howard and Dorothy as to the status of those proceeds or of the time certificate. Presumptively, therefore, the time certificate is community property having been acquired after their marriage as a result of their joint efforts. NRS 123.220; 123.130.

Howard died intestate. Consequently, the time certificate of deposit goes to Dorothy as his surviving spouse, but one-half thereof is subject to administration and creditors' claims. NRS 123.250(1).[6]

This matter is remanded to the district court for entry of judgment in accordance with this opinion.

BATJER, C. J. and ZENOFF and MOWBRAY, JJ., and HOYT, D.J., concur.

---

[6] NRS 123.250. "1. Upon the death of either husband or wife: (a) An undivided one-half interest in the community property is the property of the surviving spouse and his or her sole separate property. (b) The remaining interest is subject to the testamentary disposition of the decedent, in the absence thereof goes to the surviving spouse, and is the only portion subject to administration under the provisions of Title 12 of NRS."