SYLVIA APPELMAN, Plaintiff-Appellant, *v.* VANORA APPELMAN, Defendant-Appellee.

First District (2nd Division)    No. 79-1594

Opinion filed August 19, 1980.—Rehearing denied September 19, 1980.

Michael W. Kalcheim and Ilene E. Shapiro, both of Kalcheim & Kalcheim, Ltd., of Chicago, for appellant.

Bernard Hammer, of Bernard Hammer, Ltd., and Allen S. Pierce, of Pierce & Goldman, both of Chicago, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Sylvia Appelman (hereinafter Sylvia), first wife of decedent Norman Appelman, appeals from the trial court's dismissal of her complaint for failure to state a cause of action against defendant Vanora

Appelman, decedent's second wife (hereinafter Vanora). Sylvia sought, *inter alia*, to establish a constructive trust, with Vanora holding bare legal title on her behalf to certain proceeds of a life insurance policy that were paid to Vanora upon decedent's death. The action was brought pursuant to a provision in Sylvia's marital settlement agreement with decedent that he should maintain her as beneficiary of certain life insurance policies to the extent of $20,000 of their value. For the reasons set forth below, we reverse the trial court's dismissal of the complaint and remand the cause for further proceedings.

The relevant allegations of the complaint, filed on November 22, 1978, were that: Vanora was decedent's widow; by the terms of a marital settlement agreement (hereinafter agreement) incorporated into a judgment for divorce between Sylvia and decedent entered on May 15, 1972, the latter was required to maintain life insurance coverage on his life and to designate Sylvia as a beneficiary to the extent of $20,000; Sylvia was, by virtue of a prior order of court, the beneficiary of her former husband's life insurance policy to the extent of $20,000 of the proceeds; decedent had been an employee of Manteck Corporation, a division of National Chemsearch, Inc., and in conjunction with that employment had owned group life insurance through Republic National Life Insurance Company (hereinafter Republic), Policy No. 13227, in the face amount of $50,000 (hereinafter policy), which was the only life insurance maintained by him at his death on August 21, 1978; without Sylvia's knowledge or consent and in contravention of the divorce judgment, decedent "failed to designate [her] as beneficiary of the aforementioned policy" as indicated; upon Vanora's request, Republic paid Vanora the full face amount of the policy without notice of Sylvia's claim; and as a result of decedent's obligation as established by the agreement, Vanora's designation as beneficiary of the entire amount of the policy's proceeds was void and without effect, Sylvia remaining a lawful beneficiary thereof to the extent of $20,000. It was further alleged that Vanora had wilfully defrauded Sylvia of her interest in the proceeds by concealing the existence of the policy from her. Beside declaration of her lawful status as a beneficiary of the policy and her entitlement to its proceeds to the extent of $20,000, Sylvia prayed for relief in the form of judgment against Vanora or, alternatively, establishment of a constructive trust in that amount with Vanora holding bare legal title for Sylvia's benefit.

The policy was attached to the complaint as an exhibit; the divorce judgment and incorporated agreement were not. The complaint did contain specific reference to "Page 4, Paragraph 5" of the agreement, however, as the basis of decedent's obligations to Sylvia. That portion reads as follows:

"5. That the husband shall maintain unencumbered that present

insurance on his life, though [*sic*] these companies as are listed on Schedule 'A' attached hereto and to the extent of the first Twenty Thousand Dollars ($20,000.00) he shall designate the wife as beneficiary. That it is understood and agreed by and between the parties that what is meant by the first Twenty Thousand Dollars ($20,000.00) is that in the event there is Twenty Thousand Dollars ($20,000.00) in death proceeds to be paid at the time of the husband's death, said first Twenty Thousand Dollars ($20,000.00) shall be payable to the wife in the event there is less than Twenty Thousand Dollars ($20,000.00) that amount shall be payable to the wife. At such time the husband is no longer obligated to pay to the wife permanent alimony, the husband shall be entitled to change the beneficial designation. The husband shall furnish the wife evidence that the aforesaid beneficial designation has been effectuated."

On December 28, 1978, Vanora filed a motion to strike and dismiss the complaint for failure to allege a cause of action, representing that: decedent had married Vanora on April 22, 1973; the policy was "one of the fringe benefits" of his employment and had become effective six months after his marriage to Vanora and 16 months after his divorce from Sylvia; Vanora had no knowledge of the policy until after decedent's death and was not guilty of any fraud or misrepresentation; "an Order of Court was entered July 6, 1978 terminating maintenance"; in the agreement "the insurance companies were listed on Schedule 'A' attached thereto to the extent of $20,000 and named [Sylvia] as beneficiary"; and the policy, having been issued sixteen months after the divorce decree was entered, could not have been included in Schedule "A" thereof.

In her memorandum in opposition to the motion, Sylvia represented that through "clerical inadvertence" Schedule "A", which was supposed to list the life insurance policies owned by decedent at the time of the divorce, was never attached to the judgment. In her memorandum supporting the motion, Vanora argued that Sylvia's claim was barred by the following provision of an order entered on July 6, 1978, in modification of the earlier divorce decree between Sylvia and decedent:

"This cause coming on for hearing on Petition of NORMAN M. APPELMAN, for certain relief, the court having jurisdiction over the parties and subject matter and being advised in the premises: IT IS HEREBY ORDERED by agreement of the parties herein that the permanent alimony or maintenance heretofore ordered be abated until the further order of court."

Considered in conjunction with the penultimate sentence of page 4, paragraph 5 of the agreement as given above, the quoted portion of the July 6 order was claimed to have ended decedent's obligations to Sylvia in

regard to maintenance of insurance. Vanora further asserted that "[w]hether the failure to list Schedule 'A' was clerical error or negligence was immaterial," the July 6 order having rendered that question moot. No such schedule appears in the record on appeal, attached to the agreement or otherwise.

Two issues are raised for review: (a) whether a cause of action may exist for imposition of a constructive trust upon the recipient of life insurance proceeds to which the plaintiff has an equitable claim, and, (b) if so, whether the affirmative matter raised by Vanora, the recipient in this case, bars Sylvia's claim to a portion of the proceeds. The former question has not heretofore been considered by this court. In *Brunnenmeyer v. Massachusetts Mutual Life Insurance Co.* (1978), 66 Ill. App. 3d 315, 384 N.E.2d 446, it was recognized that "[a] beneficiary may, * * * acquire a vested interest in the proceeds of [a] life insurance policy if he gives valuable consideration in return for the promise of the insured that the insured will name him beneficiary, "and further that" [t]he beneficiary named as a result of such an agreement has an equitable right which will be enforced as against any other named beneficiary except one who has a superior equitable right. [Citation.]" (66 Ill. App. 3d 315, 318.) In *Brunnenmeyer,* however, although the court did give effect to such an equitable right pursuant to a provision in a marital settlement agreement to maintain the children of the marriage as beneficiaries of a certain insurance policy, the obligation there at issue was subject to a condition which still obtained at decedent's death, namely, the minority of the children. (66 Ill. App. 3d 315, 317.) Likewise, in *Lincoln National Life Insurance Co. v. Watson* (1979), 71 Ill. App. 3d 900, 390 N.E.2d 506, the court held that equity required the obligation to maintain decedent's son as beneficiary of a certain life insurance policy for his minority be enforced although the required designation of the son as beneficiary had never been effected. In both of the foregoing cases the insurance company was directly involved, in *Watson* as interpleader and in *Brunnenmeyer* directly as a party defendant and third-party plaintiff; in neither had the proceeds that were the object of the dispute been distributed when suit was brought. These factors distinguish the case before us.

Acknowledging that these cases are not precisely analogous to the present one, in which she is suing only the recipient of the insurance proceeds of a policy which was acquired after the divorce, Sylvia relies upon decisions of sister States in which an equitable interest in the proceeds of after-acquired insurance policies was recognized under similar facts. In *Simonds v. Simonds* (1978), 45 N.Y.2d 233, 240, 408 N.Y.S.2d 359, 362, 380 N.E.2d 189, 193, the New York Court of Appeals held that the imposition of a constructive trust on insurance proceeds from after-acquired policies held by the second wife was proper where it

appeared that the deceased husband had breached a provision in his separation agreement with the first wife which required him to maintain certain life insurance policies in effect for her benefit. The court in *Simonds* found that the separation agreement constituted sufficient consideration to maintain a claimant as a beneficiary of a life insurance policy and vested in the claimant an equitable interest in the policies designated. This interest was held to be superior to that of a named beneficiary who had given no consideration, notwithstanding policy provisions permitting the insured to change freely the designated beneficiary. The *Simonds* court observed that mere substitution of policies, or even substitution of insurance companies, would not defeat that equitable interest. The separation agreement at issue in *Simonds* expressly provided that the first wife's right should attach to any newly acquired policies in the event of cancellation or lapse of the existing ones; however, her right to equitable relief was grounded in the deceased husband's wrongful failure to maintain the existing policies in her name in contravention of their agreement (45 N.Y.2d 233, 240, 408 N.Y.S.2d 359, 362, 380 N.E.2d 189, 193), as also alleged in the case at bar.

In *McKissick v. McKissick* (1977), 93 Nev. 139, 144, 560 P.2d 1366, 1369, an equitable assignment for the benefit of the first wife was recognized where the divorce decree obligated the deceased husband to maintain her as an irrevocable beneficiary of his life insurance, although neither the insurance company nor the policy specifically designated in the property settlement agreement existed at the time the latter was concluded. Subsequently the husband increased his insurance to a face amount in excess of the figure mentioned in the settlement agreement. In order to effectuate the "intention on the part of [the husband] to provide life insurance for the benefit of [the first wife] and the children," the court affirmed that portion of the trial court's judgment imposing a constructive trust on the proceeds of the after-acquired policy held by the second wife. 93 Nev. 139, 144, 560 P.2d 1366, 1368-69; see also *Richards v. Richards* (1973), 58 Wis. 2d 290, 206 N.W.2d 134, 137-38.

■■ The foregoing decisions, considered in conjunction with *Brunnenmeyer v. Massachusetts Mutual Life Insurance Co.* and *Lincoln National Life Insurance Co. v. Watson*, are persuasive authority for recognition of the cause of action for imposition of a constructive trust sought to be maintained here. The allegations of the complaint invoked at least inferentially the four factors whose presence was found in *Simonds* to support that remedy: (1) a promise, (2) a transfer in reliance thereon, (3) a fiduciary relationship between decedent and his first wife and (4) unjust enrichment of the second (45 N.Y.2d 233, 241, 408 N.Y.S.2d 359, 363-64, 380 N.E.2d 189, 194). For example, decedent's obligation in the agreement here to provide for life insurance is presumably a negotiated

term in an enforceable contract with attendant promises and reliance, absent any evidence of fraud or duress (see *Brunnenmeyer v. Massachusetts Mutual Life Insurance Co.* (1978), 66 Ill. App. 3d 315, 318; *Bellow v. Bellow* (1976), 40 Ill. App. 3d 442, 352 N.E.2d 427). A fiduciary relationship can be inferred from the marital bond existing between Sylvia and decedent when the agreement was made (see *Miethe v. Miethe* (1951), 410 Ill. 226, 230-31, 101 N.E.2d 571; *Mauricau v. Haugen* (1944), 387 Ill. 186, 192, 56 N.E.2d 367). Unjust enrichment does not require any wrongdoing on the part of the enriched party, but only that property is held by him " 'under such circumstances that in equity and good conscience he ought not to retain it' [citations]." *Simonds*, 45 N.Y.2d 233, 242, 408 N.Y.S.2d 359, 364, 380 N.E.2d 189, 194.

■ We next consider whether the cause of action is in this instance barred by the absence of Schedule "A" and the effect of the July 6, 1978, order, which had been entered by a judge sitting in the domestic relations division. Before this court, as below, Vanora relies upon these factors, as the trial court apparently did in granting her motion. As to the former, the motion to dismiss and supporting memorandum presumed its existence in response to Sylvia's claim that it did not appear with the judgment because of "clerical inadvertence." Even assuming, as Vanora maintains before this court, that no Schedule "A" was ever prepared, reference to it in the agreement raises a question as to the intention of the contracting parties which must be factually resolved. See *Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 665-66, 373 N.E.2d 645; *McKissick v. McKissick* (1977), 93 Nev. 139, 144, 560 P.2d 1366, 1368.

Vanora emphasizes the July 6 order abating decedent's obligation to pay alimony to Sylvia "until further order of court," claiming that his release from the alimony obligation triggered, under the terms of the agreement, his right to change the beneficial designation of any insurance policies owned by him, thereby releasing any legal obligations to Sylvia in relation to them. Sylvia replies that the order of July 6 was an agreed order which only temporarily suspended decedent's alimony obligation because he was terminally ill and hospitalized; it did not permanently revoke the obligation and therefore did not relieve decedent of his obligation under the agreement to maintain insurance for her benefit.

■ The motion to dismiss was not specifically brought under either section 45 or section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45, 48). The grounds urged in the accompanying memorandum do not appear on the face of the complaint; accordingly, we construe it as brought pursuant to section 48(1)(i) (*Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 666-67). Vanora's reference to the July 6 order as *res judicata*, if intended to suggest that it constituted a prior adjudication of the present issue under section 48(1)(d), is unpersuasive; it could be

sustained only if the precise issue involved in the instant case was determined by the July 6 order (*Ray v. Starr* (1953), 351 Ill. App. 344, 349-50, 115 N.E.2d 112), which it was not. Under the well-settled requirements for granting a section 48 motion (see, *e.g., Tidwell v. Smith* (1960), 27 Ill. App. 2d 63, 69-71, 169 N.E.2d 157), the controlling question is whether the purported effect of the July 6 order is "so conclusive that a plaintiff could not deny it" (*John v. Tribune Co.* (1958), 19 Ill. App. 2d 547, 553, 154 N.E.2d 862, *rev'd on other grounds* (1962), 24 Ill. 2d 437, 181 N.E.2d 105), or, alternatively, that it constituted "nothing more than evidence upon which a defendant expects to contest a material fact stated in the complaint." *Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 667; *House of Realty, Inc. v. Ziff* (1972), 9 Ill. App. 3d 419, 292 N.E.2d 71.

■ The terms of the order itself compel the latter conclusion. Depending upon the context of its use, "abatement" may denote either temporary suspension or permanent cessation, for example, as applied to a cause of action (*Geiger v. Merle* (1935), 360 Ill. 497, 509, 196 N.E. 497). It is reasonable to infer that employed in relation to decedent's alimony obligation to Sylvia, the July 6 order was simply meant to establish a temporary suspension of the required payments until decedent was able to resume making them (see *Noga v. Noga* (Ariz. App. 1978), 119 Ariz. 302, 303, 580 P.2d 763, 764). Additional support for this view is supplied by the phrase "until the further order of court," which would be superfluous, in light of the court's continuing general jurisdiction over the cause, if revocation of the abatement were not contemplated by the parties at some discernible point in the future. The correlative term in the agreement likewise admits of a reasonable interpretation that the July 6 order did not bring it into operation so as to end decedent's insurance obligations to Sylvia.

Vanora cites *Maginnis v. Maginnis* (1926), 323 Ill. 113, 153 N.E. 654, as authority for the court's inherent power to terminate an insurance provision in a marital settlement agreement when support requirements are terminated. That principle is not at issue. Unlike *Maginnis,* the present case concerns involuntary dismissal of a complaint without a hearing or other inquiry into the intention of the parties beyond the documents submitted.

For the reasons set forth above, we are compelled to set aside the dismissal of plaintiff's complaint and remand the cause for proceedings consistent with the views expressed herein.

Reversed and remanded.

PERLIN, P. J., and STAMOS, J., concur.