Rel: April 7, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

————————————————

### SC-2022-0478

————————————————

**Carol N. Upchurch, individually and as executor of the Estate of Michael W. Upchurch, deceased**

**v.**

**David Upchurch and Jason Upchurch**

**Appeal from Talladega Circuit Court**
**(CV-20-900314)**

COOK, Justice.

Michael W. Upchurch, his brother David Upchurch, and his nephew

Jason Upchurch owned several pieces of real property as joint tenants with the right of survivorship. They signed a contract to sell the properties to third parties. However, before closing, Michael died. In this declaratory-judgment action, Michael's widow Carol N. Upchurch, individually and as the executor of Michael's estate, asserted, among other things, a claim to one-third of the proceeds from that sale. David and Jason filed a motion for a summary judgment, which the Talladega Circuit Court granted. We hold that, under the circumstances, Michael, David, and Jason's decision to enter into a contract to sell the properties severed their joint tenancy and that, as a result, Michael's estate is entitled to one-third of the proceeds from the sale of properties. We therefore reverse the trial court's judgment and remand the cause for the entry of a judgment consistent with this opinion.

## Facts and Procedural History

By virtue of three separate deeds, Michael, David, and Jason acquired several pieces of real property in Talladega ("the Talladega properties"), upon which Michael and Jason operated a business known as Talladega Cycle Sales, Inc. All three deeds expressly stated that the three men held the Talladega properties "for and during their joint lives,

and upon the death of either of them, then to the survivor of them, in fee simple, together with every contingent remainder and right of reversion."

Several years after Michael, David, and Jason obtained the Talladega properties, Michael married Carol. No adjustments were made to the deeds in light of Michael's marriage to Carol.

On March 13, 2020, Michael, David, and Jason entered into a real-estate sales contract ("the land sale contract") to sell the Talladega properties to John Crawford and Matthew Crawford.[1] At the time, it was agreed that Michael, David, and Jason would receive $5,000 as consideration, to be paid upon execution of the contract -- i.e., before closing. The land sale contract stated, in pertinent part:

> "The parties agree the closing of this transaction shall take place on or before 5-13-2020. Purchasers shall not be entitled to possession of said property prior to closing. Purchasers further understand and agree Sellers shall be allowed to continue to advertise the real estate for sale and make the property available for inspection by other prospective purchasers until this transaction is closed and in the event this transaction is not closed on or before 5-13-2020 the Sellers shall be free to enter into a [sic] agreement to sell said property to another party. In that event, Purchasers' earnest money shall be refunded to them and Purchasers will execute

---

[1]There was also a second contract, pursuant to which Michael and Jason agreed to sell Talladega Cycle Sales, Inc., to the Crawfords. Although the proceeds from that sale were also a subject of the litigation below, they are not at issue in this appeal.

a cancellation of this agreement."

(Emphasis added.) The land sale contract did not mention the joint tenancy between Michael, David, and Jason.

On April 30, 2020, less than a month before the parties to the land sale contract were set to close on the sale of the Talladega properties, Michael died. Michael's will was admitted to probate, and Carol was named executor of his estate.

On September 4, 2020, Carol, individually and as the executor of Michael's estate, filed a declaratory-judgment action against David and Jason, alleging, among other things, that Michael's estate was owed one-third of any proceeds obtained from the sale of the Talladega properties. According to Carol, when Michael, David, and Jason entered into the land sale contract with the Crawfords, their joint tenancy with the right of survivorship was severed and they became tenants in common. As a result, Carol contended, Michael's estate was entitled to a pro rata share of the proceeds obtained from the sale of the Talladega properties, and she asked the trial court to enter an order "directing that all proceeds from the sale of the [Talladega properties] … be paid to the Clerk of this Court pending further orders of this Court."

4

That same day, the trial court granted that request in part and ordered the closing attorney to pay one-third of the net proceeds from the sale of the Talladega properties -- or $84,422.25 -- to the clerk of the trial court once the sale was completed.

On September 16, 2020, the sale of the Talladega properties was finalized; David and Jason each received checks for one-third of the proceeds, totaling $84,422.24 each. A check for Michael's one-third interest was then deposited with the trial-court clerk.

Following additional filings and proceedings, each side filed a motion for summary judgment. In their joint summary-judgment motion, David and Jason argued that the deeds granting Michael, David, and Jason each a one-third ownership interest in the Talladega properties specifically stated that they owned the properties "for and during their joint lives, and upon the death of either of them, then to the survivor of them, in fee simple" and that the execution of the land sale contract did not work to sever the joint tenancy with the right of survivorship created by the deeds. In support of their motion, David and Jason attached copies of the three deeds related to the Talladega properties.

In her summary-judgment motion, Carol argued that the execution

of the land sale contract acted to sever Michael, David, and Jason's joint tenancy with the right of survivorship and converted their interests into a joint tenancy in common. Accordingly, she argued that one-third of the proceeds from the sale of the Talladega properties was required to be paid to Michael's estate. In support of her motion, Carol attached, among other things, copies of the three deeds and the land sale contract.

On November 1, 2021, the trial court held a hearing on the motions for a summary judgment. About a month later, the trial court entered a judgment granting David and Jason's summary-judgment motion and denying Carol's summary-judgment motion. Shortly thereafter, Carol filed a postjudgment motion to alter, amend, or vacate the trial court's judgment, which was subsequently denied. Carol then filed a timely notice of appeal.

### Standard of Review

> "'"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v.

6

Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989)."'

"Prince v. Poole, 935 So. 2d 431, 442 (Ala. 2006) (quoting Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004))."

Brown v. W.P. Media, Inc., 17 So. 3d 1167, 1169 (Ala. 2009).

## Discussion

On appeal, Carol maintains that the execution of the land sale contract acted to sever Michael, David, and Jason's joint tenancy with the right of survivorship and converted their interests into a tenancy in common. Accordingly, she argues that one-third of the proceeds from the sale of the Talladega properties is required to be paid to Michael's estate for distribution to his heirs. David and Jason contend, however, that,

7

because the language of the land sale contract did not manifest an intent to sever the joint tenancy with the right of survivorship and because there is no evidence that either of them attempted to unilaterally destroy the joint tenancy before Michael's death, they -- as the remaining survivors of the joint tenancy -- are the ones who are entitled to the disputed one-third of the proceeds.

Section 35-4-7, Ala. Code 1975, addresses survivorship between joint tenants and provides:

> "When one joint tenant dies before the severance, his interest does not survive to the other joint tenants but descends and vests as if his interest had been severed and ascertained; provided, that in the event it is stated in the instrument creating such tenancy that such tenancy is with right of survivorship or other words used therein showing such intention, then, upon the death of one joint tenant, his interest shall pass to the surviving joint tenant or tenants according to the intent of such instrument. This shall include those instruments of conveyance in which the grantor conveys to himself and one or more other persons and in which instruments it clearly appears that the intent is to create such a survivorship between joint tenants as is herein contemplated."

This Court has previously explained:

> " 'An estate in joint tenancy is one held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivorship. Because of this right of survivorship,

> upon the death of a joint tenant, the entire estate goes to the survivor or, in the case of more than two joint tenants, to the survivors, and so on to the last survivor. The estate passes free and exempt from all charges made by the deceased cotenant or cotenants.'

"20 Am. Jur. 2d Cotenancy and Joint Ownership § 4 (2015) (footnotes omitted)."

Ex parte Arvest Bank, 219 So. 3d 620, 628 (Ala. 2016).

However, a joint tenancy with the right of survivorship may be severed or destroyed by an act of one or more of the tenants that is inconsistent with the continuation of the joint tenancy. 1 Jesse P. Evans III, Alabama Property Rights and Remedies § 3.14[d][x] (5th ed. 2012). Acts inconsistent with the continuation of a joint tenancy with the right of survivorship include the disruption of any one of the required three unities -- title, interest, and possession -- such as through the sale of the property for a division of proceeds.[2] Id.

---

[2]We note briefly that, at common law, "a joint tenancy could be created only where the four unities of time, title, interest, and possession were present and the destruction of any of these would terminate the joint tenancy." Nunn v. Keith, 289 Ala. 518, 521, 268 So. 2d 792, 794 (1972). However, the purpose and effect of § 35-4-7, Ala. Code 1975, and its predecessors was to eliminate the requirement that one of the four unities -- time -- exist in order to create such an estate; thus, only the three unities listed above are now required. See 289 Ala. at 523, 248 So. 2d at 797.

"'[W]hen the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion.

"'By the doctrine of equitable conversion under an executory contract of sale, the equitable estate, in its entirety, passes immediately to the purchaser at the moment the contract becomes effective and the bare legal title for security purposes remains in the vendor. The purchaser of the land is looked on and treated as the owner thereof, and the vendor, though holding the legal title, holds it as a trustee for the purchaser, and the vendee holds the purchase money in trust for the vendor....' (Footnotes omitted.)"

Grass v. Ward, 451 So. 2d 803, 805 (Ala. 1984) (quoting 8A G. Thompson, Commentaries on the Modern Law of Real Property § 4447) (emphasis added). See also Hudson v. Hudson, 701 So. 2d 13, 15 (Ala. Civ. App. 1997) (recognizing the same).

This Court has previously held that, in Alabama, when all the joint tenants agree to sell their property to a third party, their joint tenancy with the right of survivorship is automatically is severed. See Swan v. Magnusson, 418 So. 2d 844, 845 (Ala. 1982) (recognizing that a husband and wife's sale of their home to a third party "effectively destroyed the joint ownership with rights of survivorship"). More recently, this Court

10

has explained that an agreement providing for the eventual sale of a piece of real property evinces an intent to no longer hold the property in joint tenancy from the effective date of the agreement and, thus, not only severs such a joint tenancy but also creates a tenancy in common. See Fitts v. Stokes, 841 So. 2d 229, 232 (Ala. 2002) (holding that the property settlement between a husband and wife that was incorporated into their divorce judgment extinguished their joint tenancy with the right of survivorship and created a tenancy in common); Kirven v. Reynolds, 536 So. 2d 936, 938 (Ala. 1988) (recognizing that "the parties themselves, or the court with the parties before it, may terminate the estate, the termination resulting in the creation of a tenancy in common without a right of survivorship"); and Watford v. Hale, 410 So. 2d 885, 886 (Ala. 1982) (recognizing that an "'agreement provid[ing] for the ultimate sale of the property and the division of the proceeds … evinces the intent to no longer hold the property in joint tenancy from the effective date of the agreement'") (quoting Mann v. Bradley, 188 Colo. 392, 395, 535 P.2d 213, 215 (1975))).[3]

_____

[3]As David and Jason note, there is a split of authority on this issue nationally. Some courts, including those in Alabama, have adopted the view that a contract of sale entered into by all the joint tenants with a

Carol argues that, by entering into the land sale contract with the Crawfords, Michael, David, and Jason evinced a clear intent to no longer hold the Talladega properties as joint tenants with the right of survivorship. In support of that contention, Carol relies on this Court's decision in <u>Watford</u>. In that case, a husband and wife acquired title to certain real property as joint tenants with the right of survivorship. They later divorced, and their divorce judgment incorporated a property-

_____

third party severs or terminates the joint tenancy, absent evidence to the contrary. <u>See, e.g.</u>, <u>Parker v. Parker</u>, 434 So. 2d 1361, 1362 (Miss. 1983) (holding that a joint tenancy is severed when the parties enter into a valid contract containing provisions inconsistent with the joint tenancy); and <u>Kozacik v. Kozacik</u>, 157 Fla. 597, 602, 26 So. 2d 659, 662 (1946) (holding that a contract of sale is sufficient to terminate a joint tenancy). <u>See</u> <u>also</u> <u>Smith v. Morton</u>, 29 Cal. App. 3d 616, 106 Cal. Rptr. 52 (1972); <u>In re Estate of Bates</u>, 492 N.W.2d 704, 706 (Iowa Ct. App. 1992); <u>Buford v. Dahlke</u>, 158 Neb. 39, 44, 62 N.W.2d 252, 255 (1954); <u>McKissick v. McKissick</u>, 93 Nev. 139, 148, 560 P.2d 1366, 1371 (1977); and <u>Yannopoulos v. Sophos</u>, 243 Pa. Super. 454, 459, 365 A.2d 1312, 1314 (1976). Others have concluded that such a contract of sale does not sever or terminate a joint tenancy or a tenancy by the entirety absent additional evidence of intent to sever. <u>See, e.g.</u>, <u>Weise v. Kizer</u>, 435 So. 2d 381 (Fla. Dist. Ct. App. 1983); <u>Doran v. Nally</u>, 10 Mass. App. Ct. 893, 409 N.E.2d 1321 (1980); <u>Field v. Field</u>, 130 Misc. 2d 751, 497 N.Y.S.2d 586 (Sup. Ct. 1985); and <u>Wonka v. Cari</u>, 249 Wis. 2d 23, 637 N.W.2d 92 (Ct. App. 2001). <u>See, generally</u>, Sara L. Johnson, Annotation, <u>Contract of Sale or Granting of Option to Purchase, to Third Party, by Both or All of Joint Tenants or Tenants by Entirety As Severing Or Terminating Tenancy</u>, 39 A.L.R. 4th 1068 (1985 & Supp. 2018) (collecting cases addressing this issue from other jurisdictions).

settlement agreement, which stated, in pertinent part:

> "'(c) The property owned jointly by the parties hereto and located in Marengo County, Alabama, containing 200 acres more or less, shall be sold upon the agreement of both parties. The proceeds of any sale of the above real estate shall be divided equally among said parties. Until such time as the above property is sold, plaintiff and defendant agree to each pay one-half of the mortgage payments to the State Bank of Sweetwater, Alabama, as the same become due. Each party also agrees to pay one-half of any other expense relating to said property, including but not limited to payments for taxes, insurance, and maintenance of said property.'"

410 So. 2d at 885. The judgment therefore ordered each party to pay one-half of the mortgage payments and other expenses relating to the property "'[u]ntil such time as the ... property is sold.'" Id. Four years later, the husband died intestate, and neither party had taken any action toward selling the property. The wife initiated a declaratory-judgment action against the husband's heirs-at-law and next of kin, claiming that, as the surviving joint tenant, she held the property in fee simple. The defendants claimed that the divorce judgment incorporating the property-settlement agreement had destroyed the joint tenancy with the right of survivorship and had converted the ownership of the property to a tenancy in common.

The trial court held that the husband and wife's intention had been

to "'divide the property and create a tenancy in common,'" as indicated by their property-settlement agreement that had been made a part of their divorce judgment and that, therefore, the joint tenancy with the right of survivorship had terminated. Id. at 886. As a result, the trial court held that the husband's heirs-at-law and next of kin were the lawful holders of the husband's interest in the property.

This Court, in a per curiam opinion, agreed and held that the property-settlement agreement incorporated into the divorce judgment evidenced an intention to sever the joint tenancy with the right of survivorship. This Court explained:

> "'The intent of the parties as shown in the property settlement agreement is central to the issue presented. This agreement provided for the ultimate sale of the property and the division of the proceeds, which evinces the intent to no longer hold the property in joint tenancy from the effective date of the agreement. The entire tenor of those provisions of the agreement pertaining to this property is inconsistent with any purpose of the parties to continue the right of survivorship, which is the sine qua non of joint tenancy.'"

Id. (quoting Mann, 188 Colo. at 395, 535 P.2d at 215).

According to Carol, the land sale contract in this case, like the property-settlement agreement in Watford, provided for the sale of the Talladega properties and "the payment of the proceeds to the three sellers

14

who executed it 'which evinces the intent to no longer hold the propert[ies] in joint tenancy from the effective date of the agreement.' " Carol's brief at 9 (quoting Watford, 410 So. 2d at 886). She further contends that the " 'entire tenor of [the] provisions of the [land sale contract] pertaining to [the Talladega] propert[ies] is inconsistent with any purpose of the parties to continue the right of survivorship, which is the sine qua non of joint tenancy.'" Carol's brief at 9-10 (quoting Watford, 410 So. 3d at 886.)

David and Jason contend that Watford is inapplicable because, they assert, in that case the parties, in contemplation of divorce, entered into a property-settlement agreement that specifically stipulated that the property owned jointly by them with the right of survivorship would be sold at a later date and that the proceeds would be divided equally between them. According to David and Jason, the execution of such an agreement as part of a divorce settlement will sever a joint tenancy with the right of survivorship between divorcing parties. They contend, however, that, by its own terms, the land sale contract in the present case did not act as a conveyance but, instead, acted as an agreement to convey the Talladega properties at a later date.

15

In support of their contention, David and Jason point to the fact that the land sale contract allowed for them and Michael "to continue to advertise the real estate for sale and make the property available for inspection by other prospective purchasers until this transaction is closed" and also gave them the option to sell the Talladega properties to another purchaser in the event the closing did not occur by May 13, 2020. They further point out that, per the terms of the land sale contract, Michael, David, and Jason also had no obligation to convey the Talladega properties to the Crawfords if they defaulted.

However, under the legal principles discussed above, by virtue of entering into the land sale contract with the Crawfords, Michael, David, and Jason evinced an intent to sever the joint tenancy between them. Further, additional evidence supports this conclusion about the intent to sever. The land sale contract made no mention of maintaining the joint tenancy with the right of survivorship between Michael, David, and Jason if any of the events described in the preceding paragraph occurred. It would be illogical to conclude that Michael, David, and Jason intended for their joint tenancy to continue once the land sale contract <u>and the agreement to sell the business</u> on the Talladega properties were executed.

16

See note 1, supra. Moreover, under the land sale contract, the Crawfords, as the purchasers of the Talladega properties were "'looked on and treated as the owner thereof,'" with Michael, David, and Jason, as the "vendors," merely holding the properties "'as … trustee[s] for the purchaser[s].'" Grass, 451 So. 2d at 805.

Under these circumstances, the joint tenancy with the right of survivorship between Michael, David, and Jason was severed and became a tenancy in common. This Court has stated that the "major distinction between a tenancy in common and a joint tenancy is that the interest held by tenants in common is devisable and descendible, whereas the interest held by joint tenants passes automatically to the last survivor." Porter v. Porter, 472 So. 2d 630, 632 (Ala. 1985). Having established that a tenancy in common existed at the time of Michael's death and at the time the Talladega properties were sold, Michael's estate was entitled to one-third of the proceeds from the sale, representing Michael's interest in the properties.

## Conclusion

Because Michael, David, and Jason entered into the land sale contract for the purpose of selling the Talladega properties, which they

owned as joint tenants with the right of survivorship, the evidence indicates that they intended to sever their joint tenancy. Therefore, their joint tenancy was converted into a tenancy in common, thereby entitling Michael's estate to one-third of the proceeds from the sale of the Talladega properties. We, therefore, reverse the trial court's judgment granting David and Jason's summary-judgment motion and denying Carol's summary-judgment motion, and we remand the cause for the trial court to enter a judgment consistent with this opinion.

REVERSED AND REMANDED.

Parker, C.J., and Wise, Sellers, and Stewart, JJ., concur.