(No. 31909.—

ALBERT MIETHE, Appellee, *vs.* ETHEL MIETHE, Appellant.

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

BRISTOW, J., took no part.

Bookwalter, Carter, Gunn & Hickman, of Danville, (Horace E. Gunn, and Robert Z. Hickman, of counsel,) for appellant.

Ralph Rouse, of Danville, for appellee.

Mr. Justice Hershey delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Vermilion County imposing a trust upon an undivided one-half interest in certain real estate, title to which had previously been acquired by appellant through a deed from her husband, the appellee.

Prior to January 4, 1943, appellant and appellee, husband and wife, were the owners of six pieces of residential property, title to which was held by them either as joint tenants or as tenants in common. On that day the husband and wife executed and delivered a deed conveying all the property they owned to Lucile Limback, who immediately conveyed title back to the wife, Ethel Miethe, the appellant. On March 10, 1949, the husband, Albert Miethe, the appellee, filed a suit to set aside the deeds, insofar as they related to his undivided one-half interest in the properties, on the grounds that he did not have mental capacity at the time the first deed was executed to make a conveyance of his property, and that this deed was obtained from him by undue influence, fraud, and duress. Issue was joined and the cause proceeded to trial. After the evidence had all been adduced in the cause, appellee amended his complaint by an additional count wherein he charged that a fiduciary relationship existed between him and his wife at the time of the execution of the deed in question; that the conveyance was without consideration and was induced by reason

of the confidential relation between them; that the wife wrongfully claimed to be the fee owner of all the property described in the deed; and that a constructive trust should be impressed upon the real estate to the extent of the undivided one-half interest owned by appellee. No further evidence was taken. The chancellor found that appellee had not sustained the burden of proof required to set aside the deed in question and dismissed the cause of action stated in the original complaint for want of equity. However, the court found, as alleged in the amendments to the complaint, that a fiduciary relationship existed between appellee and appellant at the time of the execution and delivery of the deeds in question, and that the evidence was clearly sufficient to establish a constructive trust to the undivided one-half interest in the real estate previously conveyed to appellant through a deed from her husband. From this decree the wife has perfected an appeal to this court. It becomes necessary, therefore, to review the evidence to determine whether or not the findings of the chancellor are contrary to the manifest weight of the evidence.

The parties to the suit were married in 1904. At the time of the trial the husband was 75 years of age and the wife was 14 years younger than her husband. When they were married, the parties owned no property. The husband was a coal miner employed by the Peabody Coal Company from 1908 until its mine was shut down in 1947. Throughout their married life the husband turned over his pay check to his wife, and she looked after all the business affairs of the family. They were thrifty people and accumulated considerable money and property through the years. The wife appeared to have unusual business ability. While the husband had very little education, he was industrious, hard working, and in his later years earned an income of approximately $500 per month. In about the year 1916 the family moved from their country home near the village of Grape Creek to the nearby city of Danville.

By that time they had accumulated approximately $2400 in savings and in addition had received $2500 from the sale of their small farm. They purchased a small home in Danville, and thereafter bought and sold a number of pieces of property. In each instance the title to the property purchased was taken in the joint names of the husband and wife. The wife had no independent income, and all the capital invested in the properties acquired by the husband and wife came originally from the husband's wages. The wife designed, planned, and built a number of houses on real estate which was purchased out of the original savings, wages of the husband, and the accumulations which resulted from the foresight, thrift, industry and judgment of the wife. While the husband did some work in repairing and looking after the properties owned by the couple, the evidence discloses that all their business and financial affairs were in the sole charge of the wife. The program of building new houses and apartments, or purchasing and remodeling old ones, commenced in about the year 1920 and continued through the enterprise of the wife until, at the time of the deed in controversy, the parties had acquired and held joint title to six separate houses and small apartments having a total value of between $50,000 and $60,000. A few months after the conveyance was made, marital difficulties arose between the parties which resulted thenceforth in their living separate and apart. Appellant continued to look after the properties, used the proceeds to support herself and provide a college education for their remaining daughter, and made no accounting thereof to appellee. For his part, appellee continued to work at the mine for a substantial salary until it closed in 1947. He made no further contributions to the support of the family. Recently he has been unemployed and in meager circumstances. Since the separation of the parties one of the properties described in the deed has been sold for $15,000 and another for $10,000. Appellee signed deeds to both

properties at the request of appellant. He received no share of the proceeds of the sale of either property. When he was requested to sign a deed to a third property which had been sold by appellant, he refused to do so, and she subsequently stopped paying a small allowance she had been giving him to pay for his board and room.

Appellant's· first contention is that the conveyance of appellee's one-half interest in their joint property to her is presumed in law to be an absolute gift of the property to her. The reason for a presumption of gift in such cases was aptly stated in the case of *Wright* v. *Wright*, 242 Ill. 71, where, at page 78, it was said: "The inference which the law permits to be drawn in this class of cases is based upon the common knowledge and experience of mankind in regard to the motives that usually accompany transactions of that character. Where there is a legal obligation resting on the one furnishing the consideration to support the person in whose name the conveyance is taken, it is said in some of the cases that the law will infer an intention to make a gift or an advancement, and that to establish a resulting trust the transaction must be attended by circumstances that negative this inference, or, as it has sometimes been expressed though not with entire accuracy, by circumstances showing an intention to create a trust." The relationship of husband and wife is one of such confidence and trust that courts will scrutinize transactions between them very closely. *Mauricau* v. *Haugen*, 387 Ill. 186.) While confidential relationships necessarily exist between a husband and wife when they reside together under the ordinary conditions of marriage, nevertheless, it cannot be said as a matter of law that one of the parties is the dominant and the other the dependent party. Whether or not that be true is a question of fact. *Brod* v. *Brod*, 390 Ill. 312.

It is clearly revealed by the evidence in this case that for many years the wife and husband had been engaged in a series of enterprises undertaken for their mutual benefit

in which the wife supplied the initiative, intelligence, and business acumen necessary for success. On the other hand, the husband had only a second-grade education and was satisfied to carry on his chief employment at the coal mine while his wife invested his earnings. Title to the first property purchased by the parties for investment was taken in their joint names. The capital came from his earnings, and the inference of a gift to the wife of a one-half interest in the property is not questioned. That the wife was the dominant party in all these transactions is conclusively shown by the evidence. It was generally conceded in the family, all of whom testified, that the husband very wisely let the wife hold the purse strings and conduct all the financial and business ventures carried on for the mutual benefit of the parties. The husband, too, had great confidence in the wife's business qualifications and good judgment. The finding of the chancellor that the parties stood in a relation of trust and confidence is not contrary to the manifest weight of the evidence.

The general rule is that where a fiduciary relationship has been established, the burden rests upon the fiduciary to show the fairness of the questioned transaction. The rule that a presumption of undue influence is raised by the existence of the fiduciary relation, however, is not applicable to conveyances from husband to wife. And the presumption of gift which follows such a conveyance is rebutted where it appears that there was an obligation on the part of the wife to hold the property in trust for the husband. *Moneta* v. *Hoinacki,* 394 Ill. 47; *Delfosse* v. *Delfosse,* 287 Ill. 251.

In order to determine whether the challenged transaction was attended by circumstances which negative the inference of an intention to make a gift of the remaining one-half interest in the property, and whether there was an obligation on the part of appellant to hold title to the remaining one-half interest in trust for appellee, the facts

and circumstances surrounding the execution of the deed must be reviewed. On Sunday, January 3, 1943, Mr. Miethe spent most of the day in and out of taverns drinking beer. He testified that late in the evening he had become intoxicated and was assaulted and hit over the head with some hard object. After the brawl he was taken first to the police station and then to the hospital where his scalp wound was treated by his physician. He was kept in custody until the next morning, when he was fined for the offense of drunkenness. Appellant came to the police station and paid the fine. On the way home they stopped at the doctor's office for an examination of appellee's condition. The doctor testified that appellee was mentally upset and confused. Appellee testified that he had no recollection whatever concerning the events of that day and did not recall executing the deed in controversy. Three witnesses testified concerning the execution of the deed. Appellant testified that she pointed out to appellee that he had gone on this kind of binge many times and that sometime he would do something to make them lose everything they had; that appellee thereupon told her to go downtown and get everything they owned put over in her name; that she went to the building and loan association where their abstracts were being held and had a Mr. Watkins, who was employed by the building and loan association and who lived near the home of the parties, prepare a deed conveying all of their properties to her; that to accomplish this purpose she was advised that it was necessary to have a deed executed by both appellant and appellee to a third party who would immediately convey the property back to appellant. She testified that when Watkins came to their home, appellee questioned the fact that there was only one paper for him to sign and insisted that everything should be put in her name. It was explained to him that the one deed contained a description of all the property and appellee then signed the deed without further question. One of

the daughters of the parties was attending high school and resided at home. She testified that when she came. home after school, on the day that the deed was executed, her father appeared sorry and disturbed because he had been arrested and put in jail for drunkenness, and told her that her mother was going to get all of their property put in her name; that shortly thereafter Watkins came and the deed was executed. Watkins testified that he had the deeds prepared at the instance of Mrs. Miethe and that he took them by the Miethe home late in the afternoon and explained to Miethe, in the presence of his wife and daughter, that the two deeds were required to transfer the title of the property to Mrs. Miethe; that he had very little conversation with the parties, was present with them not more than five minutes, and left as soon as the deed was executed and acknowledged. An older son of the parties, who resides at Wheaton, came home on the weekend following the execution of the deed and had a conversation with his father regarding the transaction. According to him the father said that he had put all the property in appellant's name. It is significant that none of the witnesses testified that the husband indicated to them in any way that he was giving the property to the wife or making a property settlement upon her. On the contrary, the most that any witness said was to the effect that appellee was putting the title of all of the property in the wife's name.

It must be remembered that at the time this transaction took place appellee was just recovering from the effects of a drunken brawl which had resulted in an injury to his head requiring medical attention; that the doctor who cared for him testified that he was in a confused state of mind on the morning of the day the deed was executed; that, undoubtedly, appellee felt the scorn of his wife and family for the disgrace his actions had brought upon them; that the wife admitted upbraiding appellee for his riotous conduct, charging him with endangering their property

rights, and actively engaging in procuring the conveyances to be made. Under the stress and pressure of these circumstances, at the instigation of the wife, and as a result of the trust and confidence he had in her, he conveyed all his interest in their joint property so that the whole legal title vested in the dominant member of the family who had been managing and successfully directing their financial affairs for many years. The parties already stood in a relation of trust and confidence which imposed upon appellant the necessity of justness and fairness in her dealings with the trust property. (*Wesselhoeft* v. *Wesselhoeft,* 369 Ill. 419.) A person who has voluntarily assumed a confidential relation towards another cannot afterward do any act for his own gain at the expense of that relation. (*Delfosse* v. *Delfosse,* 287 Ill. 251.) A constructive trust arises where some fraud or advantage is taken in the procurement of the conveyance. The wife already was the owner of an undivided one-half interest in all the properties conveyed, and it is difficult to believe, under the circumstances appearing in evidence, that appellee designed that all his remaining property should be thenceforth appropriated for her exclusive benefit. Men are not so generous, and such a construction of the transaction, under the facts shown by the record, would be unreasonable. (*Adlard* v. *Adlard,* 65 Ill. 212.) Keeping in view the relationship of the parties, the facts and circumstances surrounding the execution of the deeds in question, the relationship of the parties in their business affairs, the provision already made for the wife, her agency in procuring the conveyance to herself, and the transfer of the title to his entire estate in the late years of his life without making any provision for his own future, impels us to agree with the chancellor that the evidence amply rebuts the inference that the conveyance to appellant was intended as a gift to her of appellee's one-half interest in the property. Where the chancellor has heard the testimony of the witnesses in open court, his

findings upon the question of the existence of a fiduciary relationship and the other facts in evidence are entitled to great weight and will not be disturbed unless clearly and palpably against the manifest weight of the evidence. (*O'Malley* v. *Deany*, 384 Ill. 484.) After reviewing all of the evidence in the case, we have concluded that we would not be justified in disturbing the findings and decree of the chancellor.

The decree of the circuit court of Vermilion County is accordingly affirmed. *Decree affirmed.*

Mr. JUSTICE BRISTOW took no part in the consideration or decision of this case.