ORIN W. WOLD, Plaintiff-Appellee, *v.* RUTH A. WOLD, a/k/a Ruth A. Hartlett, Defendant-Appellant.

Second District (2nd Division)   No. 74-442

Opinion filed November 15, 1976.

Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellant.

Michael J. Sullivan and James R. Green, both of Joslyn & Green, of Woodstock, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

In April of 1970, plaintiff, aged 64, sued the 57-year-old defendant for divorce after a marriage of somewhat more than one year. In the suit,

plaintiff sought the imposition of a constructive trust upon certain real property and stocks which he had previously transferred to defendant. Subsequently joined with this action was a suit by plaintiff's son, George, to determine his interest in certain of these assets. The trial court ordered the validity of the transfers from plaintiff to defendant be the first matter determined. After a hearing on this count, the trial court found that the defendant held the real property and stocks as constructive trustee for the benefit of plaintiff and ordered her to reconvey the property to him. Defendant appeals this order.

The sole issue raised on appeal is that the quantum of proof necessary to establish a constructive trust was lacking under the facts of the case.

Until the time of her marriage to Mr. Wold, the defendant worked as a nurse in the Evanston offices of Dr. Edward Poser, with whom she split the profits of his office practice. This arrangement arose after Dr. Poser took over the medical practice of defendant's former husband when the latter and defendant were divorced and he left the area. She terminated this working relationship with Dr. Poser soon after her marriage to plaintiff. Defendant also manufactured and sold a liver extract for medical use. At the time of her marriage to plaintiff, defendant had assets of approximately $100,000, consisting of a house in Deerfield, an apartment in Evanston, and about $14,000 in cash and savings.

The plaintiff holds a Ph.D. and is the retired western sales manager of the Eugene Dietzgen Company. He is also the president of Bull Valley Hunt Club, and he draws a salary of approximately $15,000 a year in this capacity. At the time of his marriage to defendant, plaintiff's assets consisted of 463 shares of stock in the Dietzgen Company, 920 shares of stock in the Bull Valley Management Corporation, and 422 acres of land in Bull Valley. The acreage is used in the operation of the Hunt Club, although the Hunt Club buildings are on another 123 acres owned by the Management Corporation.

The Hunt Club is primarily managed by plaintiff's son, George, who had previous experience of this nature and who was apparently the moving force behind the purchase of the Hunt Club in 1959. It is alleged that, by oral contract, George and the plaintiff owned the Hunt Club jointly, and that the subject acreage was held in plaintiff's sole name as a protective measure because, at the time of purchase, George was being sued in an apparently unrelated tort action.

Plaintiff and defendant met in July of 1968 through their mutual acquaintance with Dr. Poser. Several major changes occurred in plaintiff's personal relationships in the 18 months that followed. After a brief but intense courtship, the couple was married on September 21, 1968. That fall plaintiff's daughter moved to New York and virtually lost contact with her father. Following his marriage plaintiff's relationship

with George, which had been somewhat cool until that time, progressively deteriorated as plaintiff began to assert himself in the management of the Hunt Club. Early in 1969, it became apparent that George intended to sue the plaintiff. Plaintiff hired an attorney to represent him in the dispute in April, and George sued him in June of 1969 to force him to convey a one-half interest in the Bull Valley property to George, or, in the alternative, to pay George $45,000 on three promissory notes. Meanwhile, in February, 1969, plaintiff made a will leaving everything to his wife. In lengthy deeds prepared by his wife and dated May 15, 1969, he conveyed title to the 422 Bull Valley Acres to her. The deeds to the Bull Valley property were misplaced, and in August defendant prepared a second, then a third set of deeds to the property; the latter, dated August 28, 1969, were executed. Defendant subsequently found the first set of deeds. By instruments dated August 25 and August 28, 1969, plaintiff assigned his Hunt Club and Dietzgen Company stock to defendant. In September, defendant recorded the deeds to the Hunt Club property. Defendant never transferred any of her property to plaintiff, although she did pay his attorney $3000 on his behalf. The relationship between husband and wife deteriorated in the fall of 1969, and on or about January 20, 1970, they separated. Two days later the defendant executed a will leaving all of her assets to plaintiff; this will was still in effect at the date of trial.

There is substantial conflict between husband and wife regarding the circumstances of these transfers. Defendant maintains that the assets were gifts from her husband to secure her future, and that at no time during the fall of 1969 did plaintiff ask her to reconvey them to him. Plaintiff, on the other hand, maintains that he at no time intended these as gifts, but instead that the acreage and stocks were transferred to defendant, over his consistent opposition, at her insistence that she should hold them as protection from George, and that he was relying on her promise to reconvey them. He testified that he signed the deeds to the real property because he believed them to be invalid since they included in the legal description the 40 acres belonging to the Bull Valley Management Corporation. He maintained that he believed the stock assignments were not valid because he did not have the stock certificates to transfer to defendant as they were being held by his bank as collateral at that time. (Defendant testified that she too believed the stock assignment ineffective, for the reason that it was not certified.) Plaintiff maintains that he asked his wife to reconvey these assets repeatedly in the fall of 1969, but that she refused to do so.

Plaintiff's theory of this case is that a confidential relationship grew up between him, an elderly, long-term alcoholic with only tenuous ties to his family, and his wife, a successful business woman with considerable

financial assets of her own; that she contributed to the further isolation of the plaintiff from his family by her insistence that the plaintiff take a more active role in the Hunt Club management; and that she abused their confidential relationship for her own personal gain. To support his theory, plaintiff testified that he had a long-term history of heavy drinking which had resulted in his previous wife's divorcing him for alcoholism. This condition (which continued through the time of his present marriage) and its effects were being treated by Dr. Poser. His daughter, with whom he was largely out of contact during the subject period, testified to his long-term drinking problem. A security guard for the Hunt Club testified that he had seen plaintiff drunk on numerous occasions during the eight years he patrolled the area, including the fall of 1969; that the drinking problem appeared to have eased considerably during the period of plaintiff's and defendant's marriage; but that on one occasion in January 1970, defendant had handed him a bottle of liquor she had retrieved from plaintiff's apartment at the Hunt Club, saying, "This is one bottle he won't drink." An attorney involved in the 1959 purchase of the Bull Valley property testified he had seen plaintiff drunk "on many occasions." Plaintiff's testimony indicated he had little contact with his daughter from December of 1968 when she moved to New York until trial, and that his relationship with George deteriorated steadily during the subject period, largely as the result of defendant's pushing him to take over the management of the Club himself. At her suggestion he had her brother, an accountant whom he had never met, inspect the Hunt Club books to determine if George had been making improper personal charges thereon.

Defendant testified that although she never saw the plaintiff drunk, he would, nevertheless, drink in her presence and then brag to everyone that he owned the Hunt Club. The bragging, rather than the drinking, was the problem according to defendant. Dr. Poser testified that whenever he saw Mr. Wold, the plaintiff was sober; that none of Poser's examinations revealed plaintiff used alcohol to excess; and "on several occasions I talked about drinking but he always denied having more than one or two to me." He treated Wold for a toxic condition of plaintiff's liver, to which alcohol could be, but was not necessarily, a contributing factor. A long-time friend of defendant testified that on 15 or more occasions when she had been with the couple during their marriage, she never saw plaintiff drunk. She further testified that during their marriage the couple appeared happy. This testimony was corroborated by a neighbor, the couple's cleaning person, and defendant's brother and sister.

■■■ The defendant has provided this court with accurate general statements of the law. Whether they are applicable to the facts of the instant case is the question we address. Constructive trusts are divided

into two classes: one in which actual fraud is the grounds for raising a trust, and one in which the existence of a fiduciary relationship and the subsequent abuse of the confidence reposed is sufficient to establish the trust. (*Bremer v. Bremer* (1952), 411 Ill. 454, 457.) Where a fiduciary or confidential relationship does not exist as a matter of law, *e.g.*, principal and agent, attorney and client, it may nonetheless arise where trust and confidence, by reason of friendship, agency and experience, are reposed by one person in another who, as a result, gains an influence and superiority over him. (*McCartney v. McCartney* (1956), 8 Ill. 2d 494, 499.) Factors to be considered in determining whether a fiduciary relationship exists include degree of kinship, disparity of age, health, mental condition, and the extent to which the allegedly servient party entrusts the handling of his business and financial affairs to the other and reposes faith and confidence in the dominant party. (*Kester v. Crilly* (1950), 405 Ill. 425, 432; *McCartney v. McCartney* (1956), 8 Ill. 2d 494, 499.) Once a fiduciary relationship has been established, the burden rests upon the fiduciary to show the fairness of the questioned transaction. The rule that a presumption of undue influence is raised by the existence of a fiduciary relationship is not applicable to conveyances from husbands to wives, where, instead, a presumption of gift arises. (*Miethe v. Miethe* (1951), 410 Ill. 226, 231.) This presumption is not conclusive, as the intention of the parties governs. If the proof discloses that the parties did not intend the conveyance to be a gift or advancement, equity will effectuate the intention of the parties. (*Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 231.) Where it appears, therefore, that there was an obligation on the wife to hold the property in trust for the husband, the presumption of gift is rebutted. (*Miethe v. Miethe* (1951), 410 Ill. 226, 231-32.) A circumstance tending to rebut the presumption of a gift is that the property conveyed consists of the husband's entire estate. *Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 231.

■■ In the instant case, defendant argues that the plaintiff intended to transfer his assets to her in order to insure her future. Plaintiff maintains, on the other hand, that he transferred his property to her only at her constant urging and in reliance upon her promise to reconvey it to him. In its findings of fact, the trial court acknowledged the presumption of gift in a voluntary transfer of property from husband to wife, but found it highly improbable "that an elderly man married to a woman for less than a year would divest himself of his whole estate as a gift to her and require no assurances from her that he [would] be taken care of in his old age." The trial court characterized as "unbelievable" defendant's testimony that the various transfers were absolute gifts. After reviewing the record we find the reasonable inferences of the evidence rebut the presumption of a gift. *Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 231.

■■ In order to establish a constructive trust, proof must be clear and convincing that a fiduciary relationship existed between the parties. (*Kester v. Crilly* (1950), 405 Ill. 425, 432.) There was evidence that plaintiff was a chronic alcoholic and that defendant had given him vitamin shots for his drinking condition. At the time of the conveyances, plaintiff was isolated from the only members of his family, having little contact with his daughter and quarrelling bitterly with his son. The fact that plaintiff transferred all his property to defendant, using documents involving lengthy, complex legal descriptions which were prepared by defendant, is indication of the trust and confidence that plaintiff placed in the defendant. (See *Kester v. Crilly* (1950), 405 Ill. 2d 425, 432.) The defendant was a successful businesswoman who was experienced in handling large amounts of property and who already had substantial personal assets. The trial court found that a confidential relationship existed between the parties and that the transfers were induced by the deceit of the dominant party; the defendant. Whether the evidence establishes clearly and convincingly that defendant was in a fiduciary relationship with plaintiff is a question of fact for determination by the trial court. (*Clark v. Clark* (1947), 398 Ill. 592, 600.) We hold that the trial court's finding that a fiduciary relationship existed between the parties was not against the manifest weight of the evidence.

After examining the record, we are of the opinion that defendant did not prove by clear and convincing evidence that she acted fairly and in good faith in her dealings with the plaintiff regarding the transfer of the property and stocks at issue. Her only defense was that these transfers were gifts to her. She offered no proof to establish, however, that these transactions were fair or that she did not abuse the confidence plaintiff reposed in her. Plaintiff, whom the trial court found to be the more credible witness, testified that he transferred the property to the defendant only because of her insistence and her promises to merely hold the property pending the outcome of his dispute with George. Because of her failure to show the fairness of the questioned transactions, defendant did not rebut the presumption that she abused her confidential relationship with plaintiff.

We hold that it was not against the manifest weight of the evidence for the trial court to find that defendant held the stock and property in question as constructive trustee for the benefit of the plaintiff. *Miethe v. Miethe* (1951), 410 Ill. 226, 234-35.

Judgment affirmed.

RECHENMACHER and DIXON, JJ., concur.