NOTICE
Decision filed 08/01/23. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2023 IL App (5th) 220630

NO. 5-22-0630

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF JOHN C. HIRSCHFELD, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Laura L. Hollis, John S. Hirschfeld, | ) | Champaign County. |
| Christopher C. Hirschfeld, Jennifer E. Ryan, | ) | |
| Adam B. Hirschfeld, Catherine P. Murphy, and | ) | |
| Robert F. Hirschfeld, | ) | |
| | ) | |
|     Petitioners-Appellants, | ) | |
| | ) | |
| v. | ) | No. 14-P-333 |
| | ) | |
| Mary E. Hirschfeld, | ) | Honorable |
| | ) | Gary A. Webber, |
|     Respondent-Appellee). | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Welch and Vaughan concurred in the judgment and opinion.

**OPINION**

¶ 1 The appellants, Laura L. Hollis, John S. Hirschfeld, Christopher C. Hirschfeld, Jennifer E. Ryan, Adam B. Hirschfeld, Catherine P. Murphy, and Robert F. Hirschfeld (petitioners), appeal the circuit court of Champaign County's August 30, 2022, order, which dismissed with prejudice, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)), the petitioners' citation to recover assets against Mary E. Hirschfeld (respondent), second wife and widow of John C. Hirschfeld (decedent). The citation to recover assets asserted claims of breach of fiduciary duty and conversion based upon the legal theory that transfers of the decedent's assets

1

overseen by the respondent were presumptively fraudulent because the transfers were effectuated for the respondent's sole benefit while holding and acting upon a written power of attorney. Also alleged was a count for criminal financial exploitation; however, that claim has been abandoned and is not at issue in this appeal. For the following reasons, we reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3      The decedent was born on August 5, 1936, and died on November 30, 2014, at the age of 78. During his life, the decedent was an attorney and principal in the Champaign law firm of Meyer Capel until May 15, 2000. The petitioners in this lawsuit are the children of the decedent with his first wife, Rita. The decedent and Rita were divorced on August 11, 1998. The decedent then married the respondent on May 29, 1999, and the two were married for approximately 15 years before the decedent's death.

¶ 4      On December 18, 2014, the respondent filed a petition for probate of will, along with the "Last Will and Testament of John C. Hirschfeld" dated August 22, 2006 (2006 will). The 2006 will was admitted to probate by the circuit court, and letters testamentary were issued on December 23, 2014, and certified on December 29, 2014.

¶ 5      The contested matters began on January 30, 2015, when the petitioners filed a "Petition to Terminate Independent Administration." That petition was granted by the circuit court on May 27, 2015. On May 26, 2015, the petitioners filed a "Petition for Accounting and for a Citation to Discover Information," which was later amended on October 21, 2015, relating to the respondent's previous status and duties as attorney-in-fact and power of attorney for the decedent. In response, on July 2, 2016, the respondent filed section 2-615 and 2-619 motions to dismiss the petition for accounting. Additionally, on June 18, 2015, the petitioners filed a "Petition to Contest Validity of and Set Aside Will with Jury Request" (will contest), which was later amended on February 19,

2

2016. The will contest alleged that the 2006 will of the decedent admitted to probate was invalid due to the decedent's lack of testamentary capacity and/or due to fraud in the inducement or undue influence by the respondent.

¶ 6     Subsequent to this activity within the case, numerous additional filings and challenges occurred related to the aforementioned pleadings. On August 11, 2017, the circuit court ordered the respondent to comply, in part, with the "Petition for Accounting and for a Citation to Discover Information." This resulted in the respondent disclosing approximately 20,000 pages of documents on October 16, 2017, related to the finances and expenses of the decedent and the respondent during the later years of the decedent's life. On July 19, 2019, the circuit court granted the respondent's motion for summary judgment dismissing the petitioners' will contest petition. This ruling was appealed and subsequently affirmed by our colleagues in the Fourth Appellate District prior to this court's redistricting.

¶ 7     During the will contest proceedings, the petitioners conducted a forensic review of the disclosed financial documents produced by the respondent pursuant to the court order of August 11, 2017, allowing partial discovery. Following the review, the petitioners claimed they discovered "years of transfers and dispositions of [the decedent's] assets by [the respondent] to herself, which she authorized or effectuated for her own benefit, and which depleted [the decedent's] estate to the point where just over $200,000 remained at the time of his death from the nearly $3,000,000 [the decedent] had in non-marital assets at the time of his marriage to [the respondent]." Further, the petitioners claimed that they discovered that these "transactions took place when the written power of attorney which [the decedent] had executed on March 24, 2000, naming [the respondent] as attorney-in-fact was in effect."

3

¶ 8    As a result of this alleged discovery, on April 23, 2019, the petitioners filed a "Petition for Issuance of Citation to Recover Assets" (petition to recover) against the respondent, along with the citation itself (citation to recover) and approximately 2000 pages of exhibits in support of their allegations. Within the petition to recover, the petitioners alleged breach of fiduciary duty, conversion, and financial exploitation by the respondent as it related to her role as wife and attorney-in-fact of the decedent. The petitioners requested, *inter alia*, the removal of the respondent as executor of the decedent's estate, for all sums of money and property improperly taken to be returned to the estate, and damages.

¶ 9    In response, the respondent filed a motion to dismiss the petition to recover pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). On June 5, 2019, the petitioners filed a motion to strike the respondent's motion to dismiss as procedurally improper. The circuit court agreed, and on July 19, 2019, the circuit court issued the citation to recover to the respondent. Following that, the petitioners withdrew their motion to strike, and the respondent's motion to dismiss was recast as a section 2-615 motion to dismiss the citation to recover, instead of the petition. The circuit court also granted the petitioners' request for removal of the respondent as executor of the decedent's estate, and James M. Lestikow, Esquire, of Hinshaw Culbertson was later appointed to serve as special administrator on approximately October 25, 2019.

¶ 10    On November 4, 2019, the petitioners filed their response to the respondent's motion to dismiss the citation to recover. Additionally, following an extension granted by the circuit court, the special administrator, Mr. Lestikow, filed his response on January 10, 2020. Mr. Lestikow's response argued against the dismissal of the breach of fiduciary duty and conversion claims as alleged in the petitioners' citation to recover. Chief among his reasoning for his recommendation

4

was (1) the existence of a prenuptial agreement signed by the decedent and the respondent shortly before their marriage; (2) the existence of a written power of attorney, and his interpretation of Illinois law that fiduciary duties existed on the respondent's part as a result; (3) the declining health of the decedent during the relevant time period contained within the petitioners' citation to recover; (4) the amount of assets transferred into the respondent's sole control; (5) the inadequacy of the respondent's accounting as required under the Illinois Power of Attorney Act (755 ILCS 45/1-1 *et seq.* (West 2018)); and (6) the allegations and appearance that the transactions in question were effectuated by the respondent and not by the decedent.

¶ 11    The circuit court held a hearing on the respondent's motion to dismiss the petitioners' citation to recover on January 24, 2020. During the hearing, the petitioners argued that as an attorney-in-fact pursuant to the March 2000 written power of attorney between the decedent and the respondent, the respondent was acting under a fiduciary duty to the decedent when transferring or handling his assets. All of the actions taken by her with regard to the decedent's estate after the time the power of attorney came into effect, wherein she personally benefited, were a breach of this fiduciary duty, and thus, presumptively fraudulent self-dealing. It was therefore the petitioners' position that under appliable Illinois law, the presumption of fraud applied to the transactions and the burden rested on the respondent to show by clear and convincing evidence that the decedent intended those transactions by which she benefited to be gifts or otherwise proper expenditures.

¶ 12    In response, the respondent argued that as the wife of the decedent, she was not subject to the same presumption and fiduciary duties as nonspouses would be under a written power of attorney. In fact, she argued that she was entitled to a presumption of a gift on all transfers by her of the decedent's property to herself as his spouse. Therefore, she contended that the petitioners

5

held the pleading burden to specifically allege how the transactions complained of were fraudulent or wrongful.

¶ 13    Special administrator Mr. Lestikow also expressed concerns regarding potential abuse that could be allowed or created where, such as in this matter, there is a written power of attorney that is not activated by a specific event or occurrence. This was especially concerning to him where the decedent is in a subsequent marriage, has children from a prior marriage, and has drafted a prenuptial agreement expressly providing that his and his new spouse's assets were to remain separate.

¶ 14    Ultimately, the circuit court agreed with the respondent, relying on her interpretation of the relevant case law, specifically a 1951 supreme court case, *Miethe v. Miethe*, 410 Ill. 226, 231 (1951). The respondent relied upon specific language in the *Miethe* court's decision to support her position:

> "The general rule is that where a fiduciary relationship has been established, the burden rests upon the fiduciary to show the fairness of the questioned transaction. The rule that a presumption of undue influence is raised by the existence of the fiduciary relation, however, is not applicable to conveyances from husband to wife." *Id.*

The circuit court went on to hold that, notwithstanding the existence of a power of attorney under which the respondent was acting, it was going to examine the arguments and sufficiency of the pleading "under the theory that the presumption will apply between a husband and wife that—of a gift and not a presumption of impropriety."

¶ 15    Following that finding, counsel for the petitioners asked the court for leave to replead in light of the circuit court's finding of the presumption of a gift applying. They also indicated that they were not seeking leave to replead count III of the citation to recover. The circuit court then

granted the motion to dismiss, dismissing count III with prejudice, and allowed the petitioners the opportunity to replead counts I and II.

¶ 16    On February 28, 2020, the circuit court held a telephone conference with the parties wherein the petitioners informed the court that in light of the circuit court's finding that a presumption of a gift applied, they no longer wished to replead and instead requested the circuit court convert its January 24, 2020, action with regards to counts I and II, wherein it gave leave to replead, to a dismissal of all counts with prejudice so that they could immediately appeal. The circuit court granted the request and entered an order on April 6, 2020. However, due to the language used within that order, when an appeal was taken on the issue, our colleagues in the Fourth District found that a final order had not yet been entered and dismissed the appeal due to a lack of jurisdiction.

¶ 17    Subsequently, on August 30, 2022, the circuit court ended an amended order wherein it found that

> "because Decedent and Respondent were spouses, the presumption of a gift applies to all transaction challenged in Counts I and II of the Citation to Recover including: (a) those where Respondent transferred Decedent's property to herself acting as agent under an operative Power of Attorney, and (b) those where Respondent allegedly directed Decedent to transfer property to her for her benefit while she was acting as agent under an operative Power of Attorney."

The circuit court noted that "Petitioners acknowledge that Count I and Count II of the Citation to Recover fail to state a claim if the presumption of gift applies to all transactions identified in Count I and Count II of the Citation to Recover." It then held that "the Petition fails to state a claim as a matter of law as to Count I for Breach of Fiduciary Duty and Count II for Conversion, such that

7

Count I and Count II are dismissed with prejudice." It then reaffirmed its dismissal with prejudice of count III.

¶ 18    Petitioners then filed this timely appeal on September 23, 2022. Additionally, we note that various facts surrounding the circumstances and transactions themselves are disputed by the parties. For brevity, we have not recited all these issues within our facts recitation; however, where relevant, we will include and discuss these issues and facts below. Further, the special administrator, Mr. Lestikow, has entered his appearance in this appeal but has not filed any briefs or indicated his position outside of the statements he made within the circuit court.

¶ 19                                    II. ANALYSIS

¶ 20    While the manner in which this case has come before us is somewhat unconventional, given the petitioners requesting an entry of dismissal with prejudice and conceding the insufficiency of their pleading when viewed under a presumption of a gift in order to facilitate an appeal, the petitioners place before us a single question: Whether the circuit court erred when it found as a matter of law that the presumption of undue influence or fraud does not apply to a spouse holding a power of attorney who engages in alleged self-dealing. We find that it did.

¶ 21    "A section 2-615(a) motion dismissal is reviewed *de novo*." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25. A motion to dismiss under section 2-615 of the Code of Civil Procedure alleges defects on the face of a complaint that amount to legal insufficiency. 735 ILCS 5/2-615(a) (West 2018). "A citation petition seeking the recovery of property must make out cognizable legal claims against the respondent, just like any other complaint." *In re Estate of Yanni*, 2015 IL App (2d) 150108, ¶ 28. In reviewing the sufficiency of a complaint, courts must accept as true all well-pleaded facts and reasonably drawn inferences in the light most favorable to the plaintiff. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 29

8

(2004). However, conclusions of law will not be assumed true unless supported by specific factual allegations. *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002).

¶ 22 The petitioners requested that the circuit court enter its section 2-615 dismissal with prejudice and conceded the insufficiency of their citation to recover when viewed under a presumption of a gift. Because of this, we cannot consider any issue as to whether the citation to recover contained facts sufficient to overcome the petitioners' burden while analyzing the pleading under a presumption of a gift. The petitioners have expressly waived any such issue by conceding that their citation to recover was insufficient. Thus, we need only to answer the question of whether the circuit court erred in finding that the presumption of a gift applied in this matter.

¶ 23 During the hearing on the section 2-615 motion to dismiss, the circuit court stated that it believed our supreme court in *Miethe*, 410 Ill. 226, had held the law to be "that there is a presumption benefiting basically the spouse. In other words, *** the rule that a presumption of undue influence is raised by the existence of the fiduciary relation is not applicable to spouses ***." The circuit court then stated, "the supreme court [has] clarified that the power of attorney gives rise to a common law fiduciary duty that's codified but not altered by the Power of Attorney Act." The circuit court then deduced that because the common law fiduciary duty is not altered by a power of attorney, *Miethe* was controlling, and that the presumption of a gift applied to transactions between spouses.

¶ 24 On appeal, the petitioners argue that the

"Circuit Court's decision ignored the numerous cases cited by Petitioners in which this Appellate Court *** and the Illinois Supreme Court have ruled that a spouse is subject to the presumption of fraud in multiple circumstances, including *Deason v. Gutzler*, 251 Ill. App. 3d 630 (5th Dist. [1993]), *Simon v. Wilson*, 291 Ill. App. 3d 495 (1st Dist. 1997) and

9

*DeHart v. DeHart*, 2013 IL 114137. Contrary to the Circuit Court's reasoning, the courts in *Deason*, *Simon* and *DeHart*, all applied the presumption of fraud and/or undue influence to a spouse who held power of attorney."

¶ 25 It is well settled that the burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking relief. *Lemp v. Hauptmann*, 170 Ill. App. 3d 753, 756-57 (1988) (citing *Farmer City State Bank v. Guingrich*, 139 Ill. App. 3d 416, 424 (1985)). "An individual holding a power of attorney is a fiduciary as a matter of law." *In re Estate of Shelton*, 2017 IL 121199, ¶ 22. "Thus, an agent appointed under a power of attorney has a common-law fiduciary duty to the principal." *Id.*; see also 755 ILCS 45/2-7(a), (b) (West 2018) (codifying the agent's duty of care owed to the principal for purposes of the Power of Attorney Act). "The fiduciary relationship between the principal and agent begins at the time the power of attorney document is signed." *Shelton*, 2017 IL 121199, ¶ 22.

¶ 26 The petitioners allege that the respondent was named the power of attorney for the decedent in a written power of attorney signed by the decedent on March 24, 2000, and that the complained-of actions occurred pursuant to this authority. The circuit court did not specifically articulate a direct finding that all of the transactions complained of were taken pursuant to this written power of attorney, but seemed to indicate that it believed the actions were largely taken pursuant to this authority. Further, some of the attached documentation shows the respondent authorizing expenditures and transfers of assets using this authority by signing her name with "P.O.A.," or otherwise indicating power of attorney, indicating that she did act as the decedent's power of attorney.

¶ 27 Because the respondent was named the decedent's power of attorney and is alleged to have acted pursuant to that authority while facilitating the at-issue transactions, it is clear that the

10

respondent did have a fiduciary relationship with the decedent. We now must examine how the power of attorney and accompanying fiduciary duties effect the respondent's subsequent complained-of actions. It is well settled in Illinois law that

> "[t]he mere existence of a fiduciary relationship prohibits the agent from seeking or obtaining any selfish benefit for herself, and if the agent does so, *the transaction is presumed to be fraudulent*. [Citations.] 'Thus, any conveyance of the principal's property that either materially benefits the agent or is for the agent's own use is presumed to be fraudulent.' " (Emphasis added.) *In re Guardianship of Spinnie*, 2016 IL App (5th) 150564, ¶ 19 (quoting *Spring Valley Nursing Center, L.P. v. Allen*, 2012 IL App (3d) 110915, ¶ 12, and citing *Clark v. Clark*, 398 Ill. 592, 601-02 (1947), *Pottinger v. Pottinger*, 238 Ill. App. 3d 908, 918 (1992), and *White v. Raines*, 215 Ill. App. 3d 49, 59 (1991)).

This presumption of undue influence would generally shift the burden to the defending party to show by clear and convincing evidence that the transaction was fair and equitable and that it did not result from the exercise of improper or undue influence. *Lemp*, 170 Ill. App. 3d at 758. Understanding that the typical presumption applied for fiduciaries who engage in self-dealing is one of undue influence or fraud, we are left only to consider whether a spousal relationship defeats that general presumption.

¶ 28       To answer this question, we first look to the Illinois Supreme Court case *Miethe*, 410 Ill. 226, which both the respondent and circuit court relied upon. Importantly, we note that it appears the circuit court did not rely on the actual holding, or outcome, of *Miethe* to guide its ruling. Instead, the circuit court and the respondent latched onto the following general statement made by the supreme court within the *Miethe* decision:

11

"The general rule is that where a fiduciary relationship has been established, the burden rests upon the fiduciary to show the fairness of the questioned transaction. The rule that a presumption of undue influence is raised by the existence of the fiduciary relation, however, is not applicable to conveyances *from husband to wife*." (Emphasis added.) *Id.* at 231.

There is no citation or further explanation following this statement. However, if we look previously within the opinion, we see the *Miethe* court state the following:

"Appellant's first contention is that the conveyance of appellee's one-half interest in their joint property to her is presumed in law to be an absolute gift of the property to her. The reason for a presumption of gift in such cases was aptly stated in the case of *Wright v. Wright*, 242 Ill. 71, where, at page 78, it was said: 'The inference which the law permits to be drawn in this class of cases is based upon the common knowledge and experience of mankind in regard to the motives that usually accompany transactions of that character. *Where there is a legal obligation resting on the one furnishing the consideration to support the person in whose name the conveyance is taken, it is said in some of the cases that the law will infer an intention to make a gift or an advancement*, and that to establish a resulting trust the transaction must be attended by circumstances that negative this inference, or, as it has sometimes been expressed though not with entire accuracy, by circumstances showing an intention to create a trust.' The relationship of husband and wife is one of such confidence and trust that *courts will scrutinize transactions between them very closely*. *Mauricau v. Haugen*, 387 Ill. 186. While confidential relationships necessarily exist between a husband and wife when they reside together under the ordinary conditions of marriage, nevertheless, *it cannot be said as a matter of law that one of the parties is the*

12

*dominant and the other the dependent party*. Whether or not that be true is a question of fact. *Brod v. Brod*, 390 Ill. 312." (Emphases added.) *Id.* at 230.

¶ 29   In *Wright v. Wright*, 242 Ill. 71, 78-79 (1909), referenced above by the *Miethe* court, the supreme court further explained:

> "All of the cases relied on by appellant in support of the proposition that where the transaction is between members of the same family it is necessary to show something more than the furnishing of the purchase money by one and taking the title in the name of another, are cases where the person paying the consideration was under a legal or moral obligation to maintain the person to whom the conveyance is made. No case is cited, and we have been unable to find any, which holds that where the wife furnishes the purchase money and the deed is taken in the name of the husband a presumption of a gift or an advancement arises. There is a clear intimation in *Francis v. Roades*, 146 Ill. 635, and *Madison v. Madison*, 206 [Ill.] 534, that no such presumption exists. The reason upon which the presumption rests where the purchase money is furnished by one who is under a legal obligation to maintain the person in whose name the deed is taken, does not apply where the wife furnished the consideration for a deed taken in the name of her husband."

¶ 30   We must examine the above statements of the law within the context of which these cases were written considering they were authored approximately a century ago. Based upon the holding in *Wright*, it is clear that the presumption arose because the supreme court was acknowledging the reality of how a family generally functioned during that time. There generally was a husband who worked and earned income for the family. His wife generally did not work outside of the home and did not generate her own income. She thus was dependent upon him to provide for her. It therefore made sense then to create a presumption of a gift within this context because the wife

13

would not typically be the dominant party within the spousal relationship. Thus, where a conveyance was made from the husband (traditionally, the dominant party, who earned the income to procure the property, and had an obligation to provide for his wife and children) to his wife (traditionally, the nondominant party, who likely was uneducated and lacked the same rights as her husband), applying a presumption of undue influence or fraud did not make sense. Instead, a presumption of a gift was more fitting and reflective of what typically occurred within that relational context. Therefore, under the *Wright* framework, any conveyance initiated by the husband (or dominant party) of property, which he had purchased with his income, to his wife (or nondominant party) was presumed to be gifted.

¶ 31    For further explanation, we turn to a supreme court decision, *Rickman v. Meier*, 213 Ill. 507 (1904), which occurred just a few years prior to *Wright*. The *Rickman* court stated the following:

> "Where, however, the natural position of the parties has become reversed, where the parent defers to, trusts in and yields to the child, where there exists between them what in law is termed a fiduciary relation, in which the parent is dominated by the child, and where the child prepares, or causes to be prepared and executed, an instrument conveying to him property of the parent, as a gift or upon a grossly inadequate consideration, the presumption arises that the transfer was obtained through his undue influence, and the burden then rests upon him to show that the conveyance was the result of full and free deliberation on the part of the parent. This is not peculiar to transactions where the parties are parent and child, *but is the law in any case where a fiduciary relation exists, where the conveyance is from the dependent to the dominant party, and where the donee or grantee prepares or procures the preparation and execution of the deed or other instrument; and*

14

*the rule is applied, under such circumstances, wherever that relation exists, no matter whether the parties are related by blood or not*." (Emphasis added.) *Id.* at 516-17.

¶ 32    Therefore, while the *Wright* court explains how the presumption of a gift applies where the "natural" or "traditional" positions of the spouses are in place, the *Rickman* court explains how the presumption of undue influence and fraud applies where the power dynamic between the parties has changed, or "the natural position of the parties has become reversed" (*id.* at 516), and where self-dealing is alleged. *Rickman* finds that where the formerly dominant party is now the dependent, the presumption of undue influence will apply if the newly dominant party prepares or procures a transaction or conveyance from the newly dependent party to himself or herself, irrespective of any familial relationship between the two parties. Stated more simply, where a fiduciary relationship exists and the dominant party engages in self-dealing by facilitating a conveyance of the nondominant party's property that benefits the dominant party, the presumption of undue influence or fraud applies despite any familial relationship between the parties. This is exactly the set of facts we have at issue in this appeal.

¶ 33    Turning back to *Miethe* with this context and clearer understanding, we can see that the *Miethe* court's statement that "The rule that a presumption of undue influence is raised by the existence of the fiduciary relation, however, is not applicable to conveyances from husband to wife" (*Miethe*, 410 Ill. at 231) was just a recitation of the law as stated in *Wright*. In other words, where spouses have a fiduciary relationship, and the husband, or dominant or equal party, makes a conveyance to his wife, or nondominant or equal party, the presumption of a gift will apply. Thus, the *Miethe* court was simply analyzing the situation presented to it under the framework as outlined above. However, it appears the circuit court overlooked the nuances of the framework.

15

The *Miethe* court highlighted the nuances of the framework right after it discussed the *Wright* case when it stated:

> "While confidential relationships necessarily exist between a husband and wife when they reside together under the ordinary conditions of marriage, nevertheless, it cannot be said as a matter of law that one of the parties is the dominant and the other the dependent party. Whether or not that be true is a question of fact." *Id.* at 230.

Here, the *Miethe* court was highlighting the reality that not every spousal relationship and power dynamic was the same and that in some marriages the wife was the dominant party and in some neither party was dominant. The *Miethe* court therefore rightly reiterated that transactions between spouses must be scrutinized to determine if one is dominant over the other. If one is, and they are the party conveying the property, then it is a gift. Likewise, if neither is dominant and the spouses are equals, a conveyance will be presumed a gift. However, where the roles have reversed and the previously nondominant party is now dominant and is conveying the property of the newly nondominant party to themselves, the presumption of undue influence applies. This is what the *Miethe* court held.

¶ 34    Although we acknowledge that the facts in *Miethe* are different from the present facts, we nevertheless find analysis of it to be helpful. *Miethe* involved a dispute over land between a husband and his estranged wife. The husband worked in a coal mine and generated the income for the family but only had a second-grade education. *Id.* at 231. The wife, however, was educated and handled the family's finances and invested the income her husband generated. *Id.* The two purchased various properties and homes with the husband's income, and the wife oversaw these properties with help from her husband. *Id.* One day, the husband spent all day drinking at a local tavern. *Id.* at 232. He became intoxicated, got into a brawl, and was arrested. *Id.* His wife bailed

16

him out of jail the next morning and took him to a nearby doctor for treatment. *Id.* Following the visit to the doctor, the wife convinced the husband to deed her all of the property held in his name because he had gone on these binges many times and she was afraid his mischief would cause them to lose everything they had worked for. *Id.* He agreed and deeded his property over to her. *Id.* at 233. The husband filed the lawsuit seeking to reclaim his portion of property following marital strife between the parties. *Id.* at 229-30. The husband contended that he did not even remember signing the deed and put forth evidence that he sustained a legitimate head injury in the brawl. *Id.* at 232-33.

¶ 35    The *Miethe* court found the following:

"Keeping in view the relationship of the parties, the facts and circumstances surrounding the execution of the deeds in question, the relationship of the parties in their business affairs, the provision already made for the wife, *her agency in procuring the conveyance to herself*, and the transfer of the title to his entire estate in the late years of his life without making any provision for his own future, impels us to agree with the chancellor that the evidence amply rebuts the inference that the conveyance to appellant was intended as a gift to her of appellee's one-half interest in the property." (Emphasis added.) *Id.* at 234.

¶ 36    The *Miethe* court initially applied the presumption of a gift but ultimately found that the wife's actions and self-dealing rose to the level to rebut that presumption. The supreme court applied the presumption of a gift initially because the husband and wife stood in traditional roles with a more traditional power structure (he was the sole breadwinner), until you looked more closely (she handled all of the finances and income investments). Also, there was no reversal of roles or shift in dynamics prior to the conveyance. Further, the husband signed the deed actually conveying the property to his wife, she did not convey it herself, although she did prepare the

17

materials for him to authorize. Thus, the court operated under the assumption of gift until it was shown that the wife did hold a dominant position over her husband and had obtained his property through self-dealing. Moreover, it is important to note that the court in *Miethe* had to determine if a fiduciary relationship even existed. There was no Power of Attorney Act in existence at this time, so the fiduciary relationship could have only arisen via the nature of the parties' relationship. Obviously, the facts of *Miethe* are not very similar to the facts at hand, but the case clearly articulates the law that a court is to examine the existence of a fiduciary relationship between the parties, the nature of the spouses' relationship, who initiated the conveyance that is at issue, determine which, if either, holds a dominant position, and whether self-dealing occurred.

¶ 37     That brings us to the present matter and we look to the allegations as set forth by the petitioners in their citation, which we must take as true when analyzing a section 2-615 dismissal (*Doe*, 213 Ill. 2d at 28). The parties entered into a prenuptial agreement prior to marriage, which kept certain assets held by the decedent from becoming marital property. The decedent entered the marriage with considerably more wealth than the respondent. Thus, it appears that initially during the marriage the decedent held a more dominant position in the spousal relationship than the respondent. However, the decedent became ill and his physical and mental capacity began to fail. This precipitated the creation of a power of attorney so that the respondent could care for the decedent as his health failed. The petitioners allege extensively within their citation how the decedent's mental and physical condition began to fail. The decedent eventually became dependent upon the respondent for his everyday needs, especially transportation to his doctor's appointments. At this point in the marriage, the power dynamic shifted. The respondent was now the power of attorney for the decedent, which created a fiduciary duty, and she was in the dominant position as the decedent's mental and physical health began to fail. The petitioners allege that the respondent

18

used her new authority under the power of attorney and the decedent's impaired state to her advantage and began converting and conveyancing the decedent's assets into her own. This resulted in the decedent's estate being reduced from approximately $3 million at the start of the marriage to only $200,000. We acknowledge that much of the petitioners' characterization of these events is disputed by the respondent; however, we must take as true the well-pleaded allegations of the citation to recover. *Id.* Therefore, applying the framework as outlined above, we find the presumption of undue influence or fraudulent transfer applies as it always would where the conveyance is from the dependent party to a dominant party and where the dominant party—the donee—procures it. We find this especially true in this matter considering the existence of a prenuptial agreement, the declining health of the decedent during the relevant times, the size of the assets that were conveyed or expended, and that all the complained-of transactions were facilitated by, or solely taken by, the respondent, by which she then benefited. This outcome is further supported when considering the inadequacies of the respondent's accounting, which was required pursuant to the Power of Attorney Act.

¶ 38    We note as well that the record on appeal appears to present a possible alternative reason to reverse the circuit court's order and remand for further proceedings. Of relevance to this possible alternative reason, the written power of attorney signed by the decedent in March 2000 specifically states:

> "To the extent my attorney thinks I might have done, to make, unconditionally or upon such terms and conditions as my attorney shall think fit, such gifts to any one or more of those persons consisting of my spouse, my descendants and the spouses of my descendants in my attorney's sole discretion and for any reason my attorney determines.

19

*Notwithstanding the foregoing, my attorney shall not be empowered to make gifts to himself or those persons to whom he has a general obligation of support.*" (Emphasis added.)

¶ 39 "A written power of attorney must be strictly construed so as to reflect the 'clear and obvious intent of the parties.' " *Fort Dearborn Life Insurance Co. v. Holcomb*, 316 Ill. App. 3d 485, 499 (2000) (quoting *Crawford Savings & Loan Ass'n v. Dvorak*, 40 Ill. App. 3d 288, 292 (1976), citing *McHarry v. Bowman*, 274 Ill. App. 487 (1934)). In this case, it would appear that a strong argument could be made that the power of attorney, as written, expressly prohibited the respondent from making any gifts to herself using her capacity as the decedent's attorney and that, accordingly, the presumption of a gift cannot apply because the power of attorney pursuant to which the respondent made the at-issue conveyances specifically prohibited self-dealing in the form of self-gifting. However, the parties have not raised, either in the circuit court or before this court, this possible alternative reason to reverse and remand. Therefore, we conclude that they have forfeited consideration of this possible alternative reason to reverse and remand. See *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1109 (2006) (generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on; points not argued are forfeited).

¶ 40 For all of these reasons, we find that the circuit court erred when it found as a matter of law that the presumption of undue influence or fraud does not apply to a spouse holding a power of attorney who engages in alleged self-dealing.

¶ 41                              III. CONCLUSION

¶ 42    For the foregoing reasons, we reverse the August 30, 2022, order of Champaign County dismissing the petitioners' citation to recover assets and remand to the circuit court to review the citation to recover in light of the proper applicable presumption.

¶ 43    Reversed and remanded.

*In re Estate of Hirschfeld*, 2023 IL App (5th) 220630

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Champaign County, No. 14-P-333; the Hon. Gary A. Webber, Judge, presiding. |
| **Attorneys for Appellant:** | Eric Dorkin, of Clark Hill PLC, of Chicago, and Laura L. Hollis, of Granger, Indiana, for appellants. |
| **Attorneys for Appellee:** | John E. Thies and Daniel R. Thies, of Webber & Thies, P.C., of Urbana, for appellee. |